| 60 | 117 |
| 82 | 513 |

## F. L. JONES *v.* THE STATE.

1. CRIMINAL PRACTICE. *Witnesses absent. Continuance denied. When defendant not prejudiced.*

The refusal of a Circuit Court to grant the application of a defendant indicted for murder for continuance of his case, on the ground of the absence of witnesses, though made at the first term of the court after the homicide, and within less than a month thereafter, is not a ground for reversal of a judgment of conviction, on appeal to this court, where the record shows that the appellant had the benefit in his trial of all that he claimed he could prove by the absent witnesses, and was enabled to present his case to the jury as favorably to himself as if his absent witnesses had been present.

2. SAME. *Denial of continuance. Evidence retrospectively considered.*

Although the affidavit for a continuance in such case may, when taken by itself, present a good ground therefor, yet if, when considered in connection with the evidence adduced at the trial, it is manifest that there was no real ground for the continuance, this court will not reverse the judgment because of the refusal of the court below to grant the continuance.

3. SAME. *Promptness in forcing trial. Contrary practice.*

The promptness of the court in bringing about a trial in the circumstances above indicated was a commendable departure from the common practice of permitting a term of the court after the homicide to pass before the trial of the slayer.

APPEAL from the Circuit Court of Winston County.

Hon. J. M. ARNOLD, Judge.

On the 18th of July, 1882, F. L. Jones was indicted for the murder of Thomas Jones, which, it was charged, occurred on the 3d of July, 1882. On the 21st of July the case was called for trial, and the defendant applied for a continuance, and, in support of his application, filed an affidavit stating that W. B. Johnson, S. F. Cowan, James W. Carter, and Jake Holbrook,

who had been subpœnaed as witnesses in his behalf, had failed to appear, and that their testimony was material to his defence, and the facts which he expected to prove by them could not be proven by any witnesses present; and that these witnesses were residents of this State, and their attendance could be procured for the next term of the court. The defendant alleged that he expected to prove by W. B. Johnson, in substance, that Tom Jones, the deceased, frequently insulted defendant; said that he was a d——d coward, and he intended to run him out of Louisville, and intended to kill defendant if he ever gave him the slightest cause; and that witness heard defendant, a week before the killing, tell Tom Jones he had nothing against him, and that he (the deceased) was binding himself to others to ruin affiant; whereupon Tom Jones cursed defendant, who submitted quietly. Affiant expected to prove further by Johnson that Tom Jones had been in defendant's employ, and was kindly treated by him; but he finally became much embittered against defendant, and espoused the cause of his enemies; also that Johnson saw a shotgun carried into the office of one Hight, and Tom Jones went there and came out with his hand in his pocket, on a pistol, and went across the street and assaulted affiant at his place of business, and that he fell with his pistol drawn, and witness picked it up and exhibited it, loaded, to the crowd. The defendant stated that he expected to prove by S. F. Cowan that Tom Jones told him "that he had a plan on foot by which F. L. Jones would go up, and he intended, on first opportunity, to kill him;" and that Cowan told this to affiant a few days before the killing, advising him to be on his guard. The affiant expected to prove by James W. Carter that he was in Louisville, and, a few minutes before the killing, Tom Jones was going up and down the streets trying to borrow a pistol, and applied to witness for one, saying he expected a difficulty with defendant, and was going to kill him. By Jake Holbrook the defendant expected to prove that, a few minutes before the killing, he heard Tom Jones trying to borrow a pistol with which to go and attack defendant, if nec-

essary ; and Tom Jones said defendant was a d—d coward, and he had cursed him out and defendant had taken it, and he was going to do it again and brand him a liar and scoundrel, and kill him if he showed the least sign of resentment. The defendant demanded compulsory process for the above-named witnesses.

The district attorney opposed the motion for a continuance ; proposed to admit that Cowan, Carter, and Holbrook would swear, if present, what the defendant alleged they would swear, and offered testimony to show that Johnson had fled the State, not to return ; and several witnesses were presented to the court, who swore that Johnson was liable to indictment, and had left the State, saying he did not know that he would ever come back again. The application for a continuance was denied, and the defendant put upon his trial.

On the trial a great many witnesses were examined, many of them having seen the shooting ; but it is not considered necessary to set out any more of the testimony than has some retrospective bearing upon the application for a continuance. Dr. Fox, a witness for the State, testified that about fifteen or twenty minutes before the killing, Carter, one of the defendant's absent witnesses, was taken off his horse, drunk, and put in the back room of Fox's store, where he remained an hour or more, so drunk as to be incapable of observing anything. W. T. Hodges testified, for the State, that, on the day of the killing, Cowan, another of defendant's absent witnesses, was at Winston Springs, five and a half miles from Louisville, the place of the killing, from three or four o'clock P. M., the rest of the day ; that next day, when they heard of the killing, Cowan said to witness he was surprised to hear of any trouble between defendant and Tom Jones ; that he did not know of any trouble between them. Mike Metts testified that Cowan was at Winston Springs, and said he was surprised to hear of any trouble between defendant and Tom Jones ; that he thought they were friends. R. J. Boswell testified that he left town

with Carter about an hour after the killing; he was sobering off from a drunk, and asked witness to tell him about the difficulty, so he could tell his folks at home, as he knew nothing of it.

It was proven that one Oakley and Tom Jones approached F. L. Jones, and Oakley called upon Tom Jones to say whether he had ever heard S. F. Jones say anything disrespectful of any of Oakley's family. Tom Jones said he had, or nodded assent, and F. L. Jones told him he was "a God d—d liar," and in the same instant drew a pistol and began to fire at him. After the second fire Tom Jones began to retreat, but only took a few steps, when he fell. The third shot was fired while he was falling, and the fourth and fifth after he was down, F. L. Jones holding the pistol close to his body. Five shots were fired by the defendant, most of them taking fatal effect. There was a conflict of testimony as to whether Tom Jones attempted to draw a pistol during the affray. Six witnesses testified that Tom Jones made no attempt to draw a pistol, and made no other hostile demonstration towards the defendant; but other witnesses testified upon this point as follows: S. C. Harris thought he saw Tom Jones have a pistol after defendant's second shot; L. B. Metts saw a pistol near deceased after he fell; Harry Blair saw a pistol lying near Tom Jones after he fell; J. C. Blair saw the same; J. W. Parker saw the pistol on the pavement after the shooting; Lemuel Norton saw a pistol on the ground after the killing; J. J. Scarborough thought he saw Tom Jones have a pistol as he was falling; W. M. Fox was asked for a pistol by Tom Jones about five minutes before he was killed, saying Oakley wanted him to face F. L. Jones, but he did not get the pistol, and went up the street; J. M. Boswell heard Tom Jones say, a few days before, that he intended to shoot off F. L. Jones' head; T. J. Harrison saw Tom Jones trying to draw his pistol; thought he saw the point of it in his pocket.

The defendant was convicted and sentenced to be hanged.

*William Price* and *R. C. Jones*, for the appellant.

The appellant's application for a continuance, in the lower court, should have been granted. And he demanded compulsory process for Johnson, Cowan, Holbrook, and Carter, and stated that he could have them present at the next term of the court, in the manner and form prescribed by the statute ; yet his demand was refused. In denying the motion for a continuance and in refusing to allow the defendant compulsory process for his witnesses the court erred. The statute authorizes and directs that a defendant shall have a continuance, if compulsory process will possibly obtain his witnesses, at the next term of the court, etc. Carter, Cowan, Holbrook, and Johnson were absent and the defendant was unquestionably entitled to compulsory process on his showing for a continuance on this ground. See sect. 3077 of the Code of 1880. W. B. Johnson's evidence, as set forth in the affidavit of defendant, was excluded, on the ground of non-residence. Yet the court had but adjourned when he returned, and is now and was then a citizen of Winston County.

*J. P. Allen*, on the same side.

The court erred in refusing the application for a continuance on account of the absent witnesses, W. B. Johnson and James Carter. Subpœnas had been issued for them the day of the arraignment, returnable on the third day thereafter, and the plaintiff in error was not allowed compulsory process for his witnesses, and neither would the State admit the testimony of the absent witness, Johnson, who was a material witness for the defendant. Holbrook and S. F. Cowan, living in adjoining counties, and who were at the scene of this tragedy, were material witnesses for the accused. Subpœnas had been issued for them, and plaintiff in error forced upon trial before the writs were executed. The plaintiff in error was entitled to compulsory process for his witnesses, — even if the State would and did admit what he expected to prove by them, — provided compulsory process would secure their attendance. Const., Art. I., sect. 7 ; Code 1880, sect. 3077 ; 50 Miss. 587 ; 51

Miss. 566; Code 1880, sect. 3057; 8 Smed. & M. 401; 53 Miss. 33.

*T. C. Catchings*, Attorney-General, for the State.

An application was made for the case to be continued, because of the absence of the following witnesses, to-wit: W. B. Johnson, of Winston County; S. F. Cowan, of Montgomery County; James and Jake Holbrook, of Maxwell County, and James W. Carter, of Winston County. The district attorney offered to admit that all the witnesses named, except Johnson, would swear, if present, as stated in the affidavit for continuance, and as to Johnson, he offered testimony to show that he had fled the State, not to return. It was shown that he was a defaulter as sheriff, had resigned the office, was apprehensive of arrest and prosecution, and had announced his intention a few days before to several persons to leave the State, and that he had not been since seen. As to Johnson, no objection can be found to the ruling, since he was shown to have left the State with the avowed purpose of not returning, wherefore he could not have been reached by compulsory process; and it is only where compulsory process will be likely to secure the attendance of a witness that the statute applies. Moreover, the truth of the affidavit as to what Johnson would testify was disproved by Dr. Suttle. *Strauss* v. *The State*, 58 Miss. 53. An examination of the testimony shows that several witnesses testified substantially to the facts proposed to be proved by the absent witnesses, such as threats communicated, attempts to borrow a pistol, etc.

It will also be seen from the testimony of Hodges and Metts, that the absent witness, Cowan, was not in Louisville, but at Winston Springs, about five miles in the country, when the homicide was committed, and that he knew nothing about the difficulty, and expressed surprise when he heard of it the next day. It also appears from the testimony of Boswell, that Carter, another absent witness, knew nothing about the difficulty. Upon this point, so also, the testimony of Dr. Fox, who

shows that about fifteen or twenty minutes before the shooting, Carter was taken from his horse "dead drunk," and carried into his store, where he lay for a long time, in a stupified condition. Yet according to the affidavit for a continuance, he, but a few moments before the killing, saw the deceased trying to borrow a pistol, etc.

CAMPBELL, C. J., delivered the opinion of the court.

The ground chiefly relied on by the counsel of the appellant to cause a reversal of the judgment, is a refusal of a continuance asked by the accused.

The case presents an instance of commendable determination by the officers of the law, to insure to the accused a "speedy" trial, which was his constitutional right, although not asserted by him. The too common practice of permitting a term of the court after a homicide to pass before the trial of the slayer, was justly departed from in this case, and the trial and conviction occurred in the same month in which the crime was committed. Such promptness may excite some surprise, but it meets our hearty approval, since a careful examination satisfies us that no wrong was done the prisoner. He had the benefit of all that he swore he could prove by absent witnesses, which could have been of any advantage to him, and was enabled to present the case to the jury as favorably to himself as if his absent witnesses had been present. His affidavit for a continuance, taken by itself, presents good ground for it, but when considered in connection with the evidence in the trial, it is made manifest that no real ground for a continuance existed.

We have given this case that careful attention and earnest consideration its gravity demands, and have found no ground on which to disturb the judgment, and it is affirmed.