## ROBERT LAMAR *v.* THE STATE.

1. **MURDER.** *Continuance. Absent witness. Diligence.*
   A party charged with a capital offense, who asks for a continuance before venire drawn on account of an absent witness, but fails to renew such application at the trial and makes no effort to secure such absent witness, either for appearance on the trial or on the hearing of the motion for a new trial, cannot for such refusal to continue secure a reversal of the judgment.

2. **SAME.** *Continuance. What necessary to secure.*
   To entitle a defendant in such case to a continuance because of the absence of a witness, he should promptly have the witness summoned; must ask for an attachment if the witness has been summoned and failed to appear; must apply for a continuance before venire drawn, and set out in his affidavit the name and residence of the absent witness and the facts expected to be shown by him, and also show what steps have been taken to secure his attendance; must negative the idea that he is absent with defendant's consent or procurement, and give the cause of the witness' absence, if it be known. If the continuance be refused, defendant must sue out the proper process for his witness, and when the case is called for trial must again apply for a continuance, making such changes in his affidavit as the conditions then existing require. If still refused, he should persist in using the process of the court to compel the attendance of the witness on the trial, and if convicted, on the hearing of the motion for a new trial. If the appearance of the witness cannot be had his *ex parte* affidavit must be presented to the court, if it can be obtained, on the hearing of the motion for a new trial.

3. **SAME.** *Evidence. Declarations of deceased in absence of accused.*
   L. was charged with the murder of H. It was shown that just before the killing H. said that he was going where L. then was "to persuade him to leave town." He did go and did try to induce L. to leave town, but a quarrel ensued, in which L. killed H. *Held*, that it was error to admit H.'s declaration of his intention in going where L. was, the latter not being present and having no knowledge of such declaration. But the subsequent carrying out of this expressed intention being shown, the admission of the declaration of this intention did not prejudice the defendant's case.

4. **SAME.** *Conspiracy. Evidence thereof.*
   It is competent to show a conspiracy to murder among others than the defendant, though its existence be unknown to him, if he be afterward connected with it by competent evidence.

5. **SAME.** *Presumption of malice. When circumstances proven.*
   Although the law presumes malice from the deliberate use of a deadly weapon,

this presumption should not determine the verdict in cases where presumption is swallowed up by a full disclosure of all the facts and circumstances surrounding the killing, but should be considered as a part of the whole case.

6. MURDER. *Presumption of malice. What evidence necessary to overthrow.*
It is error for the court to instruct the jury, trying an indictment for murder, that the presumption of malice arising from the proof of killing with a deadly weapon can only be overcome by the evidence to the "satisfaction of the jury." The defendant is never, under any circumstances, in any phase of any case, required to satisfy a jury of his innocence; it is sufficient for his defense if the evidence as a whole, whether introduced by himself or by the State, leaves the question of his guilt in reasonable doubt.

7. SAME. *Justification. Reasonable doubt. Instruction.*
On a trial for murder an instruction was offered by the defendant which set out a condition of things which, if it existed, or defendant honestly and reasonably believed it existed, justified him in killing the deceased, and added: "And the court further instructs the jury that defendant is entitled to be acquitted if the jury have left on their minds by the evidence a reasonable doubt as to whether the defendant honestly and reasonably believed as above set forth under the circumstances above set forth in this instruction." The court struck out the clause quoted, and then gave the instruction. *Held*, that the action of the court in striking out such clause was erroneous.

APPEAL from the Circuit Court of Lafayette County.

HON. W. S. FEATHERSTON, Judge.

In 1884 Robert Lamar was indicted for the murder of William Harmon. It appears that Robert Lamar and Dock and James Bishop had been drinking and carousing together in the little town of Dallas, in Lafayette County; that Lamar had already that day had a difficulty in which he shot a man, and that they had annoyed considerably some of the citizens of the town, among whom were the Harmons, merchants in the town. Lamar and the Bishops started home, but after they had gone about one hundred yards from Harmon's store, stopped. Wm. Harmon and several others, supposing they were going to return, started to go toward them. William Harmon, when he reached them, began in a peaceable way to persuade Lamar to go home. Lamar turned upon him and cursed and abused him. After some minutes a general fight ensued, and Harmon was killed by a shot fired by Lamar. One witness for the State testified that Harmon, before leaving the

store, said that he was going down to where Lamar and the Bishops were "to persuade them to go home." This evidence was objected to by the defendant. The court also permitted one Ritchie to testify, against the objection of defendant, that Lamar and Dock and James Bishop were together at the house of William Bishop on the night before the killing, and that Dock Bishop persuaded James Bishop to accompany him and Lamar to town the next day, though Lamar was not present at the time this took place. The further facts necessary to understand the decision will be found stated in the opinion of the court.

The second instruction given for the State was as follows:

"If the jury believe from the evidence that the defendant, with a pistol, which was a deadly weapon, shot and killed William Harmon, then the use of such deadly weapon is *prima facie* evidence of malice and an intention to murder; and before this presumption of law is overcome, it must be shown to the satisfaction of the jury by the evidence in the case that at the time of such use of such deadly weapon the defendant was in imminent danger, real or apparent, of losing his own life or suffering some great bodily harm, and such danger must have been present, urgent, and imminent at the very time of the killing."

The first instruction as asked by the defendant, and modified by the court below, will be found set out in full in the opinion of the court. The jury found the defendant guilty and he appealed.

*Edward Mayes* and *Chas. B. Howry*, for the appellant.

1. We claim that the proof raises at least a reasonable doubt whether the appellant did not act in self-defense. The second instruction for the State is erroneous, because it deprives the accused of the benefit of the reasonable doubt. This instruction is expressly condemned in *Bishop* v. *The State*, 62 Miss. In that case, however, the court, moved by the considerations that the verdict was clearly right, and that the true rule had been fully explained in other instructions, affirmed the conviction below. Here there is no such clear propriety of the conviction, and no such curative operation of other instructions.

That same instruction is erroneous because it practically instructs

the jury that every killing with a deadly weapon must be either murder or self-defense; that it is impossible to commit manslaughter with a deadly weapon.

2. The testimony of Ritchie as to the interview the night before at the home of Jim Bishop, and that of Henry Mullins and others in reference to the private talks on the fatal day at Dallas, ought not to have been admitted. We maintain that the testimony of Ritchie does not even tend to prove a conspiracy to murder the deceased, or any one else, so far as that is concerned.

*C. B. Howry* and *E. Mayes* also made oral arguments.

*T. M. Miller*, Attorney General, for the State.

1. The court did not err in refusing a continuance.

2. The next assignment of error which I shall consider is the admission of the testimony of Ben Ritchie. Ritchie testified that he saw all the defendants (the two Bishops and Lamar) at Bill Bishop's the night before the killing.

This testimony was objected to, but no reason for the objection was stated, and, indeed, none can be perceived. If this meeting the night before the difficulty, in which Harmon was slain and in which all these defendants were actors, could tend to prove a conspiracy, then it was proper to admit it; on the other hand, if, to the common understanding, it has no such tendency, then it is perfectly immaterial.

If there was in this case proof sufficient in the opinion of the court (and there manifestly was by the apparent concert among the Bishops and Lamar) to establish *prima facie* a conspiracy, then it was competent to admit the acts and declarations of the several conspirators, and this disposes of the objection as well to the testimony of Ben Ritchie as above, and also when he testified that Dock requested Jim Bishop to accompany Lamar and himself the next day.

There is nothing in the objection touching the remark of Wm. Harmon as he was leaving the store to prevent the return of the accused. It was part of the *res gestœ*, an exclamation merely, as he was then proceeding to execute his purpose. Roscoe, Cr. Ev. 24, note.

3. I submit that there was no error prejudicial to the accused in the instructions taken altogether, and in connection with the evidence and the issues presented to the consideration of the jury.

I assume that the chief if not the only objection will be made to the second instruction for the State. It is in the language of the charge of same import given in the Guice case, distinguished from the Hawthorne decision and approved by this court.

I appreciate the criticism passed on the effect of this instruction as placing too great a burden on the accused, but it seems to me perfectly plain that no harm was or could have been done in this case by granting it; and that the ruling in the Guice case should be maintained and applied because the facts are strong against the accused, because the instruction did not devolve it upon him to produce the exculpating evidence. But if mistaken in that view, *i. e.*, that the instruction is right in itself, or non-prejudicial when considered with reference to the testimony, to the issue made, still I insist, upon the authority of Bishop against the State, 62 Miss., that there is no error in this instruction when taken in connection with the others given, and especially the fifth and tenth charges for the prosecution and the fourth for defendant.

*T. M. Miller,* Attorney General, also made an oral argument.

*Phil. A. Rush,* on the same side.

1. The application for a continuance, when taken in connection with the testimony as given on the trial, does not show good grounds for a continuance. *Jones* v. *The State,* 60 Miss. 117.

2. The second instruction given for the State is *verbum verborum* with that complained of in *Guice and Guice* v. *The State,* 60 Miss. 714, and in substance the same as one in *Bishop* v. *The State,* 62 Miss. 289.

The instructions for the State and the defendant, when taken as a whole, are indubitably fair and favorable to the defendant, and propound with wonderful accuracy the law of the case. " The instructions for the defendant liberally declare the law as to reasonable doubt, the burden of proof, the measure of proof required of the State, and every other phase of the defense."

COOPER, C. J., delivered the opinion of the court.

On the seventh of May, upon the application of the district attorney, a venire was drawn for the trial of the appellant, returnable on the eleventh of the same month. Before the venire was drawn the appellant applied for a continuance because of the absence of several witnesses, all of whom, as appears by the affidavit for the continuance, resided either in the county of Lafayette, in which the trial was had, or in adjoining counties. The continuance was refused by the court, and on the eleventh day of the month the trial was begun and was concluded on the thirteenth; several days after the verdict a motion for a new trial was heard and overruled. After the refusal of the court to continue the case, the appellant took no steps to secure the attendance of the absent witnesses; he did not renew his application for continuance on the day of the trial, nor did he procure the presence of the witnesses, nor affidavits from them showing what facts they would have testified to had they been present, for use on the hearing of the motion for a new trial. Under these circumstances he cannot secure a reversal of the judgment because of the refusal of the court to continue the cause. It may be conceded that the facts set forth in the affidavit establishes the materiality of the testimony of the witnesses named, and that up to the time of the drawing of the venire the accused had used due diligence in trying to procure their attendance. But that the witnesses were material and absent was not sufficient ground for a continuance. It was necessary that the defendant should use and continue to use diligence to coerce their appearance.

One charged with a capital crime is required by statute to make application for continuance, if one is desired, before the drawing of the venire, failing in which he cannot afterward apply except for causes thereafter arising. But when an application is made before the venire is drawn and it is refused, the defendant is not relieved from the duty of attempting to secure the attendance of his witnesses on the day fixed for trial. The process of the court is still at his service, and he must invoke its aid to prepare for his trial. In this case it is more than probable that by the use of the process of the law the attendance of the witnesses might have been

secured ; in any event, the duty of making the effort rested on the defendant, and having failed to do so he cannot assign for error the refusal of the court to grant a continuance. In view of the frequency of these applications we deem it advisable to repeat what has been before substantially said as to the correct course to be pursued by a defendant who applies for a continuance. To begin with, he should promptly issue summonses for all witnesses who may be material for his defense ; for any witness who has been served with process and who has failed to appear as commanded he should ask for an attachment, which will never be refused by the court ; in capital cases he should apply for a continuance before the venire is drawn, setting out in his affidavit the names and residences of the absent witnesses, the facts expected to be proved by them, and should also show to the court what steps have been taken to secure their attendance ; he should negative the idea that they are absent with his consent or procurement, and if any reasons are known to him why they are not present, these should be stated.

If the court declines to grant the continuance he should sue out the proper process for them, and when the case is called for trial should renew his application, making such changes in his affidavit as the conditions then existing require. If the continuance is still refused, he should with unremitting diligence seek to secure their attendance pending the trial by the continued use of the process of the court; if tried and convicted he should still persist in his efforts to enforce their attendance before the expiration of the term, and on his motion for a new trial present them to the court for examination ; if, with all his efforts, he is unable to have the witnesses personally present, he should, if practicable, secure their *ex parte* affidavits, which should be presented for the consideration of the court, which, on the motion for a new trial, will review the whole case and correct any error prejudicial to the defendant which may appear in any part of the proceeding.

The court should not have admitted in evidence what was said by Harmon, when he started down to the place where Lamar and Bishop were, as to his purpose of going down there to " persuade them to leave town." Lamar was not then present, and he cannot

be affected by imputing to him knowledge of an uncommunicated declaration of a peaceable intention on the part of Harmon. But we do not see that any prejudice was thereby done to the accused in view of what appeared in evidence as to the subsequent conduct of Harmon. It was not error to admit evidence of what passed between the two Bishops on the preceding night at Mr. Bishop's house relative to Doc. Bishop's persuading Jim Bishop to go to town with them the next day. The purpose of this testimony was to show the existence of a conspiracy between the parties, and it is competent to prove a conspiracy among others, without showing knowledge or concurrence by the defendant at that time, if he afterward is, by competent evidence, connected with the conspiracy. Roscoe on Criminal Evidence 413, and authorities there cited. In *Browning's Case,* 30 Miss. 656, this rule was said to be a harsh one and hardly reconcilable with the universally admitted principles of the law of evidence, but its existence and authority were not denied.

By the second instruction which was given for the State, the district attorney invoked, in behalf of the State, the presumption of malice, which arises from the killing with a deadly weapon, and by it the jury were told that this presumption must control unless from the evidence it appeared, *to their satisfaction,* that there were circumstances of alleviation, excuse, or justification.

The very common practice by prosecuting attorneys of emphasizing the presumption of malice which arises from the use of a deadly weapon, and of isolating and separating this presumption from all the other evidence in cases in which all the facts and surrounding circumstances are known and detailed by witnesses, should be discouraged by the trial judges by inserting in such instructions when asked the explanation that, though such presumption exists, yet when the facts and circumstances of the homicide are detailed by the witnesses, the jury should consider all the evidence, and from a consideration of the whole case determine whether the killing was or was not malicious. It is true that the law presumes malice from the deliberate use of a deadly weapon; it is not true that this presumption should control in

determining the verdict in cases in which all presumptions are swallowed up by a full disclosure of all the facts surrounding and attending the killing. Instructions of this character are not erroneous, for the presumption does exist as stated, but it exists as a part of the whole case and not as a dominating factor controlling all the facts disclosed, as it is the tendency of such instructions to suggest. But the instruction in this case goes further, and informs the jury that this presumption of malice is to prevail unless, from the evidence, circumstances of alleviation, excuse, or justification are shown *to the satisfaction* of the jury. Suppose a response to this instruction in the form of a special verdict, it would read thus: "We, the jury, find that the defendant killed the deceased by the use of a deadly weapon. The facts of the killing have been fully disclosed by witnesses; we have fully considered such facts and are not satisfied from them that the killing was not malicious. In our opinion this is left in doubt by the evidence." Could it be said that on such a verdict a judgment of conviction of murder should be entered, or that a jury thus doubting, but not satisfied, should have returned a verdict of guilty?

We can only repeat what was said in *Cunningham's Case*, 56 Miss. 269; and in *Pollard's Case*, 53 Miss. 510; and in *Hawthorne's Case*, 58 Miss. 778; and in *Smith's Case*, 58 Miss. 867; and in *Ingram's Case*, 62 Miss. 142; and in *Dawson's Case*, 62 Miss. 241; and in *Bishop's Case*, 62 Miss. 289, that a defendant is never, under any circumstances, under any phase of any case, required to satisfy a jury of his innocence. It is sufficient if the evidence taken as a whole, whether introduced by the State or by the defendant, leaves the question of his guilt in reasonable doubt.

The case of *Guice* v. *The State*, 60 Miss. 714, in which an instruction of similar character was held not to be erroneous, was one in which this court was able to say that no evidence was introduced either by the State or the defendant proving, or tending to prove, an overt act by the deceased. The defendant there contended that both the evidence for the State and that for the defense sufficiently showed an overt act to justify the introduction by him of evidence of antecedent malice and threats by the deceased. The instruction

63 Miss.—18

was being examined by the court with reference to the question whether by it the jury were restricted to the evidence introduced by the defendant, excluding from their consideration such testimony favorable to the defendant as might appear in the evidence introduced by the State. In the case of *Hawthorne* v. *The State,* 58 Miss., the court had instructed the jury that the presumption of malice arising from the use of a deadly weapon must prevail unless rebutted by evidence *introduced by the defendant,* and in the Guice case this court was contrasting the instructions in the two cases, and in doing so said: " The third instruction for the State seems at first blush to be similar to the one condemned in Hawthorne's case, but upon closer inspection is seen to be free from the vice of devolving upon the accused the burden of overcoming by the production of evidence the presumption of malice arising from the use of a deadly weapon, and only requires that such presumption shall be rebutted ' by the evidence ˙in the case,' which means all the evidence, and this is correct." The instruction was being examined with reference to the sources from which the jury were to gather their information, whether from *all* the evidence or only from that of the defense, as in the Hawthorne case, and nothing was said by the court as to the quantity of evidence required by it. It is true the instruction contained the declaration of an erroneous rule on that subject, but since the court was able to say that no part of the evidence, neither that for the State nor that of the defendant, proved, or tended to prove, an overt act by the deceased, it was wholly immaterial whether a right or wrong rule had been declared as the measure of such non-existing evidence. A casual reading of the opinion in that case may lead to the conclusion that the instruction was approved as a whole, but when the facts are considered and the language of the court is applied to that phase of the instruction which was being discussed, it is manifest that it was not intended to overturn the principle announced in three previous cases, that it is always sufficient for the defendant to raise a reasonable doubt of his guilt on the whole evidence.

It is insisted by the Attorney General that the vice of the second instruction for the State is cured by the fourth instruction for the

accused. But since the judgment must be reversed upon another ground, it is unnecessary to consider this point, which we leave undecided.

By the first instruction for the defendant the court was requested to charge the jury: "That even though they should believe from the evidence that Lamar killed the deceased, yet, if the deceased was killed when Lamar honestly and reasonably believed from the behavior of the deceased that deceased was then and there seeking to take Lamar's life, or to do him some great bodily harm, not in necessary self-defense, and that the only way of avoiding such injury at the hands of deceased was to slay, then Lamar had the right to defend himself, even to the infliction of death, and the jury must acquit. And this is true although the jury should further believe from the evidence that Lamar was in no actual danger of such injury, if he was in apparent danger of it. And in passing on the action of Lamar the jury should not try him by the light of after-developed facts, nor hold him to the same code and correct judgment which they are able to form; they should put themselves in his place and judge of his acts as by the facts and circumstances by which he was surrounded. *And the court further instructs the jury that Lamar is entitled to be acquitted if the jury have left on their minds by the evidence a reasonable doubt as to whether Lamar honestly and reasonably believed as above set forth under the circumstances above set forth in this instruction.*" This instruction the court refused to give, but substituted one substantially the same in lieu of it, except that the portion in italics was omitted. The charge as asked was correct, and it was error to eliminate from it that portion by which the jury was told that the accused was entitled to acquittal if there was a reasonable doubt if that condition of things which existing would have justified his action in killing the deceased.

*For this error the judgment is reversed and a new trial awarded.*