## JIM HILL *v.* THE STATE.

1. CRIMINAL PROCEDURE.   *Continuance.   Absent witnesses.*

    It is reversible error, in a murder trial, to refuse a timely application
    for continuance where it appears that eight witnesses for defend-
    ant to prove an *alibi* were not present on the trial, five of them
    being absent because the subpœna for them was, by mistake of the
    clerk, directed to the wrong county, another on account of sick-
    ness, and another for reasons not known, it appearing that, be-
    sides defendant, only one witness testified to the *alibi*, as against
    numerous witnesses for the state, who testified to the presence of
    the accused at the scene of the killing; and it appearing, further,
    that while, on the motion for a new trial, the affidavits of the ab-
    sent witnesses were not introduced, this was because accused was
    in prison, and without family, friends or means to secure assistance.

2. SAME.   *Indictment.   Separate counts.   Distinct offenses.*

    It is bad practice to join in the same indictment counts charging dis-
    tinct offenses, though of the same general character, committed at
    different times.   *Teat* v. *State*, 53 Miss., 439.

FROM the circuit court of Washington county.

HON. R. W. WILLIAMSON, Judge.

Appellant was convicted of murder, and appeals from a judgment condemning him to be hanged. The indictment contains two counts, the first charging him with the murder of one Adeline Cutchen, and the second charging him, at the same time and place, with having assaulted Adeline Cutchen with a deadly weapon, to wit, a pistol, and, with malice aforethought, attempted to discharge the same at her with intent to kill and murder her. The facts touching the only question passed upon by the court are stated in the opinion.

*E. N. Thomas*, for appellant.

It was error to refuse a continuance. It is a dangerous exercise of judicial discretion to refuse a continuance or postponement of a trial where the affidavit alleges material facts, and where all diligence has been shown by the applicant. *Long v. State*, 52 Miss., 23. It is true the testimony of the absent witnesses would have been, in a measure, cumulative to the testimony of Josephine Baker, but our court has never held that a continuance would not be granted simply because the testimony of the absent witnesses was cumulative. In all the reported cases where the court has refused to reverse because of the refusal of the court below to grant a continuance, where the evidence was cumulative, the defendant has had several other witnesses by whom he could establish the facts desired to be proved. The defendant in this case occupies no such favorable position; he had only one witness, and that witness a relative. The application shows that defendant and his attorney have been guilty of no laches; they have had no opportunity of compulsory process. The defendant was confined in jail, penniless, friendless, without means to find competent witnesses. He had a right to rely on the officers to discharge their duties faithfully and properly. The very fact that there is a strong disposition not to believe the defense of an *alibi*, made it the

more important that these witnesses should have been present. Indeed, the indictment charged two separate offenses, and the verdict was that the defendant was guilty as charged. Of which offense was he convicted? Under the one count the penalty is death; under the other, merely imprisonment. This would be bad pleading even in civil practice, and it is especially bad in this case, where a general verdict against the defendant would result in hanging, although the jury might have intended to convict on the lesser offense.

*Frank Johnston*, attorney-general, for the state.

The application for the continuance is deficient in not setting forth what the absent witnesses would testify to, except Mary Jane Baker, and she was expected to testify to the *alibi;* but two other witnesses, Josephine Baker and Thad. Carlisle, had testified in support of the *alibi.* The testimony of the absent witnesses would have been merely cumulative. Refusal to grant a continuance in such a case has been sustained so often that it is unnecessary to cite authorities.

The indictment is not bad, on its face, in charging murder and the lesser offense, both being charged on the same day. Counsel for appellant, in his brief, presents no argument in support of the demurrer to the indictment, and cites no authorities in support of the proposition that the indictment is bad on this ground. Section 974, code 1892, provides that no conviction can be had for an attempt to commit a crime when the crime itself has been committed. This statute, however, does not supply a rule of pleading, nor forbid two distinct felonies from being joined in the same indictment. *Sarah* v. *State*, 28 Miss., 267. The court may quash the indictment if the joining of the two offenses would embarrass the prisoner, but this is not ground for a reversal. *Sarah's Case, supra; Wash* v. *State*, 14 Smed. & M., 120; *George* v. *State*, 39 Miss., 570; 1 Wharton's Crim. L., 149 to 153.

There was no motion made to require the state to elect under

which count to proceed, nor was the verdict objected to in the court below because it did not appear which count it was based upon. The rule is that where a general verdict is rendered, the general verdict is based on the count which charges the highest grade of offense. 7 Md., 135; 1 Ohio (St.), 427; 1 Blackf., 317; 42 Me., 384.

WOODS, J., delivered the opinion of the court.

The application for a continuance was based upon the absence of eight witnesses by whom the prisoner expected to make out his defense of an *alibi.* It showed that Mary Jane Baker, one of the absent witnesses, had been in attendance as a witness at the preceding term of the court, and that she had then been put under recognizance to again appear at the then term of the court, but that she was unable to be present because of illness in childbirth. From the sworn application it further appeared that Richard Baker, another of the absent witnesses, had been duly subpœnaed to attend. Both witnesses just named lived in Yazoo county. For Jennie Lenord, a third absent witness, a subpœna had been issued and placed in the hands of the sheriff of the county of the venue, Washington, and had been by that officer returned "not executed," because of failure to find the person after diligent search, although, as appears from the application to continue, this witness was at her home at R. E. Walne's, in that county, the day before the application was made.

Beside these three persons, it appears from the application, there were absent five other witnesses, all of whom resided in still another county, to wit, Holmes, and that, for these, five subpœnas had been issued, under the direction of the prisoner's counsel, on December 24—twenty days previously—and the clerk of the court instructed to send the process, for execution, to the sheriff of Holmes county, where these five witnesses lived, but that the clerk had directed the process to the sheriff of Washington county. By this sheriff of Washington county,

on January 2, this process was returned not executed, because the parties could not be found in his county, and thereafter another subpœna for these five witnesses was issued to Holmes county, but this process had not been returned at the time of presenting the application for the continuance. The application contains the usual formal and necessary features, and makes this averment: "He says he has no witness present by whom he can so well prove the above facts (*i. e.*, that he was not in Washington county or near the scene of the homicide when the crime was committed, and that he did not and could not have done the killing), and that he cannot make the same proof by any other witnesses."

No special venire seems to have been drawn or demanded, and the application to continue was promptly presented when the case was called for hearing before one of the regular juries, as we assume, and was, therefore, offered in good time. The continuance was at once denied, and the prisoner immediately put upon his trial. His conviction and sentence to death followed on the same day. Two days later a motion was entered to arrest and vacate the judgment, to set aside the verdict and to grant the prisoner a new trial. One of the many grounds upon which the motion rested was the court's action in overruling the application for the continuance. On the hearing of this motion for a new trial, these five absent witnesses were not in attendance and presented to the court for examination, nor were their *ex parte* affidavits offered for the consideration of the court; but compliance with these requirements, as laid down by this court in the case of *Lamar* v. *State*, 63 Miss., 265, may be fairly said not to have been practicable in the circumstances in which the prisoner found himself. He was a prisoner, and could make no personal efforts to procure these witnesses in court or to have their *ex parte* affidavits to offer for the court's consideration. If he had any immediate family or friends we have misread the record before us. That he was penniless affirmatively appears. What his imprisonment for-

bade him doing in person, he had not the means of employing strangers to do for him.   The ordinary process of the law to secure the attendance of these absent witnesses was his sole resource.   To that he had resorted, and his resort had proved unavailing, for, to be effective, process must be executed, and executed intelligently and faithfully.   His resort had been utterly frustrated, first, by the blunder of the officer whose duty it was to issue it, in directing it to the wrong county, and, secondly, by delay in having it executed and returned when it was at length sent to the proper officer in the right county. The absence of these five witnesses in Holmes county was not occasioned by the negligence or default of the prisoner.   In ample time he had, through his counsel, furnished the clerk of the court with the names of these five persons, and he had directed that officer to send subpœnas for them to the sheriff of the county of their residence.   Through the wholly unexplained and undenied mistake of the clerk, the process was directed to the sheriff of Washington county, where they did not reside, and, of course, where they could not be found. Until the sheriff of Washington county returned the subpœna misdirected to him, eight days after its issue, it is safe to declare the accused neither knew, nor could have well known, of the serious error of the clerk.   Apprised at length of the truth, he had other process issued to Holmes county for these witnesses, and this process, when the motion for a continuance was presented and heard and denied, had not been returned, and, when the motion for a new trial was made and overruled, this process had not still been returned, as we infer from the record.

Looking backward now over a completed trial, we see clearly that, in addition to his own evidence, the prisoner had that of only one witness with which to make out his defense of an *alibi* and to meet the numerous witnesses of the state who testified, one to his presence at, and others to his presence near, the fatal scene.   We see, too, from the evidence of the prisoner and of his solitary witness as to the *alibi*, that Mary Jane Baker (the

witness absent in childbed) and Richard Baker might have been confidently relied upon to support Josephine Baker in her statement as to the prisoner's presence in Yazoo county on the evening the murder was done in Washington county. We see, moreover, by fair inference drawn from the evidence offered for the prisoner, that the Holmes county witnesses were not sought to give evidence of the same facts deposed to by Josephine touching the prisoner's presence at the house of Richard Baker, in Yazoo county, on the twenty-sixth and twenty-seventh of December, but to testify as to the prisoner's presence at another place and time which would be inconsistent with his presence in Washington county on the afternoon when the crime was committed.

Intimating no opinion as to the truth of the statements of any witness, or as to the weight or importance of any of the evidence, including that which the absent witnesses are said to be able to make, we ask, on the whole record, can it be confidently affirmed that the action of the court in refusing the continuance was nonprejudicial to the prisoner, and that no other result would have followed if the absent witnesses had been present and testified as the prisoner's application for a continuance declared they would? We think not, and fear the man condemned to death has not had that full and fair trial to which, under the law, he is entitled.

We are not to be understood as in any way relaxing or abandoning the full and precise rule announced in *Lamar* v. *State*, 63 Miss., 265, as the proper one to be followed in making applications for continuances on account of the absence of witnesses, but this rule could not have been literally observed in the present case. The facts of the two cases are widely dissimilar, and every rule, in its wise application, must be adapted to the exigencies of the particular case.

Profoundly reluctant as we are to interpose the authority of this court in favor of one complaining of the exercise of that sound discretion inhering in trial courts in passing upon appli-

cations for continuances, and impressed as we are by the striking fact that our reports fail to disclose any reversal by this court of any judgment in any criminal case because of any refusal to continue on account of the absence of witnesses, yet, on the peculiar facts of the case in hand, and because of the fear which we cannot dispossess ourselves of that the condemned man was denied an essential right, we feel constrained to reverse the judgment and award a new trial.

We beg to utter a word of advice and warning, made proper by protracted and anxious consideration of the question raised by the demurrer to the indictment. If it be supposed that the two counts in the indictment charge distinct offenses of the same general character, and committed at different times, then such joinder of two offenses has been characterized as bad practice. In the case of the *State* v. *Teat*, 53 Miss., 439, and in *Strawhern* v. *State*, 37 *Ib.*, 422, it was said: "The practice of joining distinct felonies in the same indictment is not to be commended." In fairness to one accused of crime, he should not be put to trial on one indictment for more than one offense, and two or more counts in the same indictment should be employed only for the purpose of charging one transaction in varying forms, to meet the possible developments of the evidence on trial. In the case before us, if the second count had never been inserted in the indictment, or if the learned court had sustained the demurrer as to this count, and stricken it out, the very trial which actually took place, in every step of its progress, would have been had on the first count, for no reference to the second count's charge was ever made by anyone on either side, after the demurrer had been overruled. Why, then, it was not stricken out it is impossible for us to conceive. No possible harm could have come to the state's case by so doing, and all question of fairness to the accused would have been avoided thereby. The fair way is the safe way, and the safe way is the best way in every criminal prosecution. The history of criminal jurisprudence and practice demonstrates, generally, that if every

one prosecuted for crime were fairly and fully conceded all to which he is entitled, and if all doubtful advantages to the state were declined, and if adventurous forays into dangerous or unknown fields were shunned, and if the beaten paths were heedfully followed, there would be secured as many convictions of the guilty, and such convictions would be succeeded by few or no reversals.

*Reversed and remanded.*