## Robinson *v.* State.

No. 39552 January 17, 1955 77 So. 2d 265

*John E. Perkins*, Natchez, for appellant.

*Wm. E. Cresswell,* Asst. Atty. Gen., Jackson, for appellee.

ETHRIDGE, J.

Appellant, Mose Robinson, was convicted in the Circuit Court of Humphreys County of rape, and was sentenced to death.

The prosecutrix is a resident of Louisiana, and a doctor's wife, with two small children. In July, 1954, she was visiting relatives in Clarksdale, Mississippi. On Friday night, July 9, she left Clarksdale around 8 o'clock P. M., driving alone in her automobile. She planned to spend the night with friends in either Greenwood or Jackson, and then to drive on to her home in Louisiana the next day. Driving south, she arrived in Tchula around 11:30 P. M., and, after leaving there, she got on the wrong road and became lost. She wandered around for sometime and asked directions at four different places, but was not successful in finding her way. The radiator of her car was running hot, and around 2 o'clock A. M., she stopped her car in front of three houses, and remained there until daylight. After dawn she again started the car and drove it almost to a gravel road near a little church, where the car stalled again. She got out of the car and walked up a country road on Refuge Plantation in Humphreys County, which is about 12 miles from Belzoni. She passed two Negro men with a mule, and inquired of one family as to where she was. They also gave her a drink of water.

She then walked back to her car, and saw the defendant and S. L. Venable, both Negroes, sitting in it. She directed them to leave, and they walked a short distance away. She got in the car and defendant and Venable reappeared. Defendant jerked her out of the car by her hair and arms, and, while she was struggling and fighting him, he carried her into a small wooded tract near

the church, where the defendant raped her. She escaped before Venable could commit the same crime. While defendant was committing the rape, Venable stood by watching and holding a mule.

Harrison Carter, a young Negro boy somewhat over 10 years of age, and a nephew of the defendant, testified that he had earlier that Saturday morning given the prosecutrix a drink of water; that he heard her "hollering" and he went into the woods behind the church, where he saw the defendant commit the rape of her; that Venable was standing by holding the mule, and when appellant completed the rape, Carter led the mule back to his house.

R. J. Pope, a produce salesman who lived on Refuge Plantation, testified that around 7 to 7:30 A. M. that Saturday morning, July 10, an old Negro man came to his house and reported to him that there was a white lady in trouble. He got his pickup truck and they drove to where the prosecutrix's car was parked. Clothes were scattered all over the interior of the car. He could not find the woman, so he drove up the road a distance, near the church, where he heard a female voice calling. He then drove to a nearby store and had someone call the sheriff. Returning to the scene, the prosecutrix was coming out of the wooded area, apparently in a hysterical condition. She told him, "Watch out they will get you." She would not talk with him until the sheriff arrived. He also saw "a little boy," apparently Harrison Carter, coming out of the area leading a mule. The next morning, Sunday, R. J. Pope went to the area where he had heard her hollering and found a woman's underclothing, "step-ins," and the grass and briars had been considerably disturbed.

Appellant was arrested on the next day, Sunday, July 11, and signed a written confession that he committed the crime. It was undisputedly voluntary, and was not objected to. This confession confirms in substantial

detail the testimony of the prosecutrix, Pope, and Carter. Appellant did not testify in the trial. His only defense was a claim of insanity at the time of the offense and of the trial.

Appellant contends that the verdict and judgment are against the overwhelming weight of the evidence, and are not supported by the evidence. There is no foundation whatever for this contention. The prosecutrix and Carter testified as eye-witnesses to the crime. Pope's testimony further corroborates in numerous details that of the prosecutrix and Carter. Appellant signed a voluntary written confession describing his actions and the crime in detail. And the facts stated in that confession are fully corroborated by the testimony of the State's witnesses. Appellant says that the prosecutrix did not identify him as the person who committed the crime, but we think that her testimony unequivocally states that appellant was the man who committed the criminal acts in question. Appellant's guilt is clear and undisputed.

It is also argued that the trial court erred in overruling appellant's motion for a continuance. The crime occurred on Saturday morning, July 10, 1954. Appellant was arrested on Sunday morning, July 11, and that afternoon he signed a written confession. The Circuit Court of Humphreys County was then in its regular July term. It had convened on Monday, July 5, for four weeks. Code of 1942, Sec. 1398. The circuit judge recalled the grand jury. On Monday, July 12, appellant was indicted for rape, and the trial court appointed an attorney to represent him. On Tuesday, July 13, he filed a motion for a continuance to the next term, setting up as the sole ground "that the defendant and his attorney will not have sufficient time during this term of court to prepare his defense properly." On the same day, July 13, this motion was overruled, and a severance was granted. Appellant then filed another and identical mo-

tion for a continuance, which was overruled also on July 13. His motion for a special venire was sustained on July 13, and the jurors were ordered summoned for Friday, July 16. The trial, verdict and judgment were had on Friday, July 16.

This Court has held and Code Sec. 1520 provides that the granting of a continuance is largely within the discretion of the trial judge, and that refusal of a continuance will not be grounds for reversal unless that discretion has been abused and the court is satisfied that injustice has resulted therefrom. Code Sec. 2518 states that "All indictments shall be tried at the first term, unless good cause be shown for a continuance." Miss. Const. of 1890, Sec. 24, provides that justice shall be administered without delay, and Sec. 26 guarantees to an accused "a speedy and public trial." This case presented no complicated factual or legal questions. All of the witnesses, except the prosecutrix, apparently resided in the community in Humphreys County, and all were available to both sides. The only exception would be a Memphis doctor, who will be discussed when the defense of insanity is considered.

Appellant did not comply with the requirements of Sec. 1520. He attached no affidavits in support of his motions for continuance. He offered no evidence in the record in support of his motions for continuance, and made no showing that any particular witness or evidence was not available. He did not renew his motion for a continuance at the commencement of the trial. After the trial, his motion for a new trial did not assign the denial of a continuance as an error, and contained no affidavits or other evidence indicating what any absent witness might testify to, or indicating any prejudice to him. Thus appellant failed to comply with the long established rule of Lamar v. State, 63 Miss. 265 (1885); Bolin v. State, 209 Miss. 866, 48 So. 2d 581 (1950). The court appointed for appellant an able attorney of Humphreys

County, and apparently he made for appellant the only feasible defense, insanity. All of the State's witnesses, except the prosecutrix, were cross-examined in detail by appellant's counsel, and he appears to have been as well represented as the facts of the case permitted. ▮▮ Considering the entire record, we are of the opinion that the trial judge did not abuse his discretion in denying a continuance, and that no injustice has resulted from such denial. Appellant was clearly guilty of the crime, and the jury found against him on his plea of insanity. Other cases somewhat similar to the instant one on the denial of a continuance are Newell v. State, 209 Miss. 653, 48 So. 2d 332 (1950); Freeman v. State, 29 So. 75 (Miss. 1901); and Jones v. State, 60 Miss. 117 (1882). See also 22 C. J. S., Criminal Law, Sec. 478; 14 Am. Jur., Criminal Law, Sec. 131. ▮▮ The determination of the time to prepare to be allowed to accused and his counsel must necessarily be left largely to the sound discretion of the trial court, to be determined from all the facts and circumstances of the particular case. 22 C. J. S., p. 734.

▮▮ The offense was committed on Saturday morning, July 10. Appellant was arrested on Sunday morning, and signed a confession that afternoon. On the next day, he was indicted. Appellant says that since his confession was made prior to the time of the indictment and without a precedent preliminary hearing, it was involuntary and therefore inadmissible. The arrest occurred on a Sunday, on which day neither the grand jury nor a justice of the peace was in session. Appellant was indicted the next weekday. On the trial, he made no claim that the confession was involuntary. As required by Code Sec. 2473, he was indicted without unnecessary delay. The confession was not the result of any illegal detention. Moore v. State, 207 Miss. 140, 152-155, 41 So. 2d 368 (1949); Winston v. State, 209 Miss. 799, 48 So. 2d 513. With that argument removed, there is no contention that the confession was other than free and volun-

tary, and it is fully corroborated by the testimony of the State's witnesses.

Appellant argues that "it is obvious that Negroes were systematically excluded from the grand jury" and the petit jury. But there is no evidence in the record to support that contention.

On Friday morning, the day of the trial, appellant filed with the court a "petition for mental examination," which was a motion that appellant be committed to the Mississippi State Hospital for the Insane "for a complete mental examination for the purpose of determining the sanity of the defendant * * *." This petition set up the fact that at the age of eleven or twelve years appellant had had a severe fall from a wagon, and that at the age of seventeen years he had fallen from a horse; that on both occasions he was knocked unconscious for several days, and that since those times he was "at times irrational and ill"; that appellant "has never been very bright," and "has at times suffered from mental blackouts and lapses," so as to render him incapable of knowing the difference between right and wrong. At the end of the petition, the movant suggested that he was insane and incapable of conducting his defense.

The trial court held a preliminary hearing on this petition. Appellant's two witnesses were his mother and his stepfather. They testified that in 1944 and in 1952 appellant had had falls, from both of which he had been unconscious for several days; that after the 1944 fall he was normal at times and "at times he talked sort of rambling." After about a year "he got pretty good." Appellant's mother said that she saw him once the week before the incident in question occurred, and "he acted all right," but that on that Saturday morning, "he acted crazy." The reason why she thought he acted crazy was that he had cursed her and his sister-in-law because she refused to do some washing for him. The trouble was that he had been drinking and cursing, according to appellant's mother and stepfather. Appellant had spent a

year prior to the date of the crime in Flint, Michigan, working and living with his brother. He got along all right up there. After the 1952 fall, a Dr. Simmons of Memphis treated appellant, and told his mother, she said, that whiskey would drive him crazy. In rebuttal of this testimony, the State offered five witnesses, three of whom had known appellant for a number of years and usually saw him several times a day. All five of these witnesses said that he appeared to be entirely normal and sane, and that he knew the difference between right and wrong. All of these witnesses had ample opportunity to observe appellant and form logical opinions about him. At the end of this testimony, the trial court overruled the motion.

On the trial on the merits, both the appellant and the State introduced the same witnesses on the sanity issue. The sheriff of Humphreys County also testified on this issue. The State obtained one and the defendant seven instructions on the question of defendant's sanity. That issue was thoroughly submitted to the jury, which found against appellant.

 █ Considering the petition or motion as a suggestion of insanity, we think that the trial court was correct in overruling it without submitting it to a jury, in view of the evidence in the aforesaid preliminary hearing. When it appears to a trial court that there is a probability that defendant is incapable of making a rational defense, and "if the showing before the trial judge is sufficient to engender a reasonable probability that the defendant is then insane, that issue must be preliminarily submitted to a jury." Williams v. State, 205 Miss. 515, 524, 39 So. 2d 3 (1949); Carter v. State, 198 Miss. 523, 528, 21 So. 2d 404 (1945); Shipp v. State, 215 Miss. 541, 550, 61 So. 2d 329 (1952); Pace v. State, 67 So. 2d 521 (Miss. 1953). Under this rule the trial court must necessarily be allowed a reasonable discretion in determining whether there is a reasonable probability that accused is insane, as a condition precedent to ordering a

preliminary hearing with a jury on that issue. Otherwise, the mere filing of a motion by any defendant would entitle him to a preliminary trial on this issue. ██ ██ The evidence offered on the preliminary hearing amply supported the finding of the Circuit Court that there was not such a reasonable probability that appellant was incapable of conducting a rational defense, as to warrant the preliminary submission of that issue to a jury. Certainly we cannot say that it was manifestly wrong. See Davis v. State, 151 Miss. 883, 119 So. 805 (1928). Moreover, in the hearing on the merits, appellant submitted that issue to the jury which found against him. So for all of the above reasons, we find no error in the actions of the trial court concerning the issue of appellant's sanity. ██ ██ And considering the record as a whole, including the testimony on the merits, and appellant's actions and his signed confession, as well as the testimony of the witnesses concerning appellant's sanity, we think that the trial court and the jury were correct in concluding that appellant was not insane at the time of the commission of the offense and at the time of the trial.

For these reasons, the judgment of the Circuit Court is affirmed.

Affirmed, and Tuesday, March 8, 1955, is hereby fixed as the date for the execution of the death sentence in the manner provided by law.

All nine of the Judges concur.

---

ON MOTION TO SET NEW DATE FOR EXECUTION

November 7, 1955 83 So. 2d 99

LEE, J.

The judgment of the Circuit Court of Humphreys County, wherein the appellant, Mose Robinson, was convicted of rape and was sentenced to death, was, by this Court, affirmed on January 17, 1955, and the new date

of execution of the death sentence was fixed for Tuesday, March 8, 1955. 77 So. 2d 265.

An appeal to the Supreme Court of the United States was granted, and that Court, in Cause No. 52 Misc., styled Mose Robinson, Petitioner, v. State of Mississippi, at the October 1955 Term thereof, on October 10, 1955, denied the appellant's petition for a writ of certiorari, as shown by a certified copy of the order of that Court now on file in this Court.

Because of the pendency of the appeal to the Supreme Court of the United States, the judgment of this Court was superseded and the death sentence could not be, and was not, executed.

The Attorney General of the State has filed a motion for this Court now to set a new date for the execution of the sentence. That motion is sustained, and Friday, December 16, 1955, is hereby fixed as the date of the execution of the appellant's sentence of death, in the manner provided by law.

Motion sustained; and Friday, December 16, 1955, fixed for the date of execution of sentence.

All Justices concur.