BOLDEN *v.* MRS. FANNIE E. GATEWOOD, INDIVIDUALLY AND
AS EXECUTRIX OF THE ESTATE OF HENRY GATEWOOD, JR.,
DECEASED

No. 42916 June 1, 1964 164 So. 2d 721

*L. G. Fant, Jr.,* Holly Springs, for appellant and cross-appellee.

*L. Hamer McKenzie,* Ashland; *Ethridge & Grisham,* Oxford, for appellee and cross-appellant.

KYLE, P. J.

This case is before us on appeal by Edgar Lee Bolden, defendant in the court below, from a decree of the Chancery Court of Marshall County, rendered in favor of Mrs. Fannie E. Gatewood, complainant in the court below, for the sum of $22,200, representing the proceeds of an insurance policy on the life of the deceased, collected by the defendant for the use and benefit of the heirs or estate of the deceased.

The record shows that on September 7, 1956, Henry Gatewood, Jr., was killed in an automobile accident. At the time of his death and for a period of approximately one year prior thereto, Gatewood and the appellant, Edgar Lee Bolden, were equal partners in an implement business known as Marshall County Equipment Company. They were also engaged in a joint farming venture, and in May 1956 each partner had issued to him by Southern Farm Bureau Life Insurance Company a life insurance policy for $25,000 on the life of the other. The premiums on the two policies were paid by checks drawn on the partnership bank account.

The record shows that the partners negotiated with two insurance companies prior to the purchase of the policies, and finally purchased from H. D. Webster, agent of the above mentioned Southern Farm Bureau Life Insurance Company. Webster left with the partners a form of standard "Buy-Sell" agreement prepared by his company, and suggested to the partners that before signing the agreement they submit the form to their attorney and let him approve it or write a new one. Webster learned later that the "buy-sell" agreement form had been misplaced without execution, and he furnished another set of the same forms. Upon the death of Gatewood the policies were found, but the "buy-

sell'' agreement was not found. Bolden collected the $25,000 on the policy issued on the life of Gatewood, but denied the execution of the ''buy-sell'' partnership agreement and refused to pay over to the legal representative of Gatewood's estate the proceeds of the policy as the purchase price of Gatewood's interest in the estate of the partnership. After Bolden's refusal to carry out the terms of the ''buy-sell'' agreement, the partnership business was liquidated by agreement of the parties without prejudice to the rights of either party insofar as the proceeds of the policy were concerned.

The complainant, Mrs. Fannie E. Gatewood, as executrix of the last will and testament of Henry Gatewood, Jr., deceased, individually and as beneficiary under the will, filed her bill of complaint against the defendant, Edgar Lee Bolden, on October 16, 1961. In her bill of complaint, the complainant alleged that on or about August 1, 1955, Henry Gatewood, Jr., and the defendant entered into a copartnership under the firm name of Marshall County Equipment Company for the purpose of conducting the John Deere Farm Tractor and Equipment Company Agency in Holly Springs, and also a large farming operation; that by the terms of the partnership agreement each of the partners was to contribute an equal amount of capital and devote an equal amount of time to the business, and the profits or losses were to be shared equally between the partners; that each of the partners contributed an equal amount of capital; and the business was operated successfully, earning a net profit each year, until the death of Henry Gatewood, Jr., on September 7, 1956. The complainant further alleged that, on May 17, 1956, the, net worth of the Marshall County Equipment Company was more than $50,000, and the complainant was informed and believed and so stated that the networth of the company continued to grow until the death of Henry Gatewood, Jr.

The complainant further alleged that, on May 17, 1956, Bolden and Gatewood entered into a standard partnership insurance agreement and caused the life of each other to be insured in the face amount of $25,000 each and named each other as beneficiary of the respective policies, conditioned as follows: That in the event of the death of one of the copartners, the proceeds from the policy of insurance upon the life of such copartner would be received by the surviving partner, in trust, to be paid to the heirs or estate of the deceased copartner, and upon the payment of said sum, plus any additional sum required, the heirs, executor or administrator of the deceased copartner should receive said sum in full payment of all right, title and interest in said partnership, and such heirs, executor or administrator should sign a receipt for said sum and execute a bill of sale conveying such interest to the surviving partner for a consideration equal in amount to the amount of insurance on the deceased copartner's life, and deliver same to the surviving copartner at the time of payment of said sum.

The complainant further alleged that, pursuant to the above mentioned agreement, life insurance policy No. 82591, insuring the life of Henry Gatewood, Jr., and policy No. 82592, insuring the life of Edgar Lee Bolden, both bearing date of May 22, 1956, were issued by the Southern Farm Bureau Life Insurance Company of Jackson, Mississippi, in the face amount of $25,000 each; and that all premiums due on both policies were subsequently paid from the funds of the partnership. Since policy No. 82591 had been surrendered and payment thereon received, in trust, by the defendant Edgar Lee Bolden, policy No. 82592, insuring the life of Edgar Lee Bolden was attached as Exhibit "A" and made a part of the complainant's bill. The complainant further alleged that Southern Farm Bureau Insurance Company's standard form of partnership insurance agreement, necessary to

create an insurable interest in the life of copartners, and identical in every particular to the aforesaid executed agreement between Henry Gatewood, Jr., and Edgar Lee Bolden, except as to the blank spaces to be filled in, was also attached as Exhibit "B" to the complainant's bill.

Complainant further charged that the above mentioned policy No. 82591 and the accompanying partnership insurance agreement were among the papers of the partnership at the time of Henry Gatewood, Jr.'s death; that the partnership insurance agreement, however, had either been lost or destroyed, or was being withheld from the complainant and other heirs at law of Henry Gatewood, Jr., but the defendant Edgar Lee Bolden had admitted the execution of such agreement. The complainant alleged in her bill of complaint that the above mentioned policy No. 82591 had been surrendered and payment thereof received in trust by the defendant Bolden, and the complainant therefore attached to her bill of complaint, as Exhibit "A" thereto, policy No. 82592 issued in the name of Henry Gatewood, partner, as the insured. The complainant also attached to her bill of complaint, as Exhibit "B", a copy of Southern Farm Bureau Insurance Company's standard form of partnership agreement, necessary to create an insurable interest in the lives of copartners, same being an identical copy of the partnership insurance agreement alleged to have been executed by Henry Gatewood, Jr., and Edgar Lee Bolden, except as to the blank spaces to be filled in.

Complainant further alleged that she, as the duly appointed qualified the acting executrix of the Estate of Henry Gatewood, Jr., had made demand upon the defendant to pay over to the estate of Henry Gatewood, Jr., the sum received by him, in trust, under the above mentioned policy No. 82591, and receive a receipt and bill of sale of the interest of Henry Gatewood, Jr., in the partnership signed by the said executrix; and that

such demand had been ignored and refused. The complainant also alleged that, in addition to the aforesaid life insurance policy No. 82591, there were other assets of the partnership, including money, personal property and accounts receivable; and the defendant Bolden at all times since the death of the deceased had failed to account to the court for such assets belonging to the partnership estate.

The complainant therefore prayed that a summons be issued for the defendant requiring him to appear and answer the complainant's bill, together with certain interrogatories thereto attached, at the October 1961 term of the court; that a temporary injunction be issued restraining the defendant from disposing of the assets, books of accounts and papers of the Marshall County Equipment Company; that a receiver be appointed to take charge of and preserve the remaining assets of the partnership; that a judgment in favor of the complainant be entered against the defendant for said sum of $25,000, representing the proceeds of the above mentioned insurance policy No. 82591, issued on the life of Henry Gatewood, Jr., deceased; and that the defendant be required to receive and accept in consideration thereof, a bill of sale, executed by said executrix conveying to the defendant the interest of Henry Gatewood, Jr., deceased, in the partnership assets. The complainant also prayed for general relief.

The defendant filed his sworn answer to the complainant's bill on October 24, 1961, and also answers to the interrogatories attached to the complainant's bill. The defendant in his answer admitted that the life insurance policies were issued by the Southern Farm Bureau Life Insurance Company in the face amount of $25,000, each naming the other copartner as beneficiary. The defendant, however, denied that the policies were issued pursuant to an agreement such as that attached as Exhibit "B" to the complainant's bill and

the defendant denied that any such agreement, or any other agreement except the agreement contained in Part I-B of the application for insurance shown by complainant's Exhibit "A", by which each partner agreed to the taking out of insurance on his life by the other, was ever executed or agreed upon by the defendant and Henry Gatewood, Jr. The defendant admitted that the premiums due on both policies were subsequently paid out of the funds of the Marshall County Equipment Company.

On January 22, 1962, an agreed order was entered by the court in which it was expressly stipulated that all issues presented by the pleadings, save only as to the right to the proceeds of the life insurance policy No. 82591, were stricken from the pleadings, and the pleadings were thereby reformed so as to retain at issue only the questions concerning the rights to the proceeds of the life insurance policy issued in the name of Henry Gatewood, Jr., as the insured, that is to say, the alleged duty of the defendant Bolden to pay to the complainant the proceeds of the policy received by him after the death of the insured.

The case was heard upon its merits at the January 1962 term of the court. The evidence offered on behalf of the complainant consisted of the testimony of W. N. Ethridge, Sr., a brother of the complainant, and the complainant herself and her two stepdaughters and nieces, and the testimony of H. D. (Rocky) Webster, sales agent of the Southern Farm Bureau Life Insurance Company, who negotiated the sale of the insurance policies to the members of the partnership sometime during the month of May 1956, and the testimony of Preston McDaniel, sales agent for Massachusetts Mutual Life Insurance Company, who had discussed a plan of partnership life insurance with Bolden and Gatewood prior to their purchase of policies from the Southern Farm Bureau Life Insurance Company. The evidence

offered on behalf of the defendant consisted of the testimony of the defendant, Edgar Lee Bolden, and the testimony of Walker Houston, who was an employee of the Marshall County Equipment Company at the time of the death of Henry Gatewood, Jr.

W. N. Ethridge, Sr., an attorney at law of Oxford, Mississippi, and a member of the Lafayette County Bar, testified that the complainant, Mrs. Fannie E. Gatewood, was his sister and Henry Gatewood, Jr., the deceased, was his nephew. He stated that, in assisting the complainant in matters relating to the Estate of Henry Gatewood, Jr., on or about September 10, 1956, he went with his son, Thomas R. Ethridge, to the Marshall County Equipment Company's office and talked to Mr. Bolden about the affairs of the partnership; that he asked Mr. Bolden if there were not two life insurance policies for $25,000 each, and Mr. Bolden said there were; that he asked Mr. Bolden, ''Wasn't there an agreement on those policies, a buy and sell, they call it — insurance people call it a 'buy-sell' policy agreement?'' Mr. Bolden said there was. Mr. Ethridge testified that he then asked Mr. Bolden if he could arrange a conference between him and his sister for September 12 at her home, that Mr. Bolden agreed to the proposed conference, and Mary Walker Gatewood, Frances Gatewood and Miss Seale Boone were also present. Mr. Ethridge asked Mr. Bolden again at that conference if there were not two life insurance policies with the buy and sell agreement, and Mr. Bolden said there were. Mr. Ethridge then asked Mr. Bolden if he knew where they were. Mr. Bolden stated that he did not know, but he would look and see if he could find them.

Mr. Ethridge testified that he later went to the Equipment Company's place of business and got Mr. Bolden and Mr. Houston, an employee of the equipment company, to look through the safe to see if they could find the policies or the agreement; that after looking through

the papers in the safe, Mr. Bolden reported that the insurance policies and the agreement were not in the safe, that he suspected that they might be in the bank, the First State Bank, and he would look there. Mr. Ethridge testified that Mr. Bolden admitted that they had the policies and the agreement, and that they had signed them; that there was a little joking about the matter; that Mr. Houston said that Mr. Bolden signed the agreement, that Mr. Gatewood had told him what it was, but he didn't read it, and Mr. Gatewood said to him, "You are liable to sign something that'll cause you to get hanged or something," and they laughed it off and went on. Mr. Ethridge was then asked the following question and gave the following answer: "Q. Did Mr. Bolden make any statement concerning whether there were one set of forms, two sets of forms, or which set was furnished and which signed? A. Yes, he said that when the policies were issued Mr. Webster gave them a "buy-sell" agreement. He didn't call it that, but that's what its generally known as among the insurance people, a buy-sell agreement. And that he gave them one, and sometime later came back by there. He hadn't gotten that one in, and Henry had evidently lost it or misplaced the form, and so he left another one, and he said that was the one they signed."

Mr. Ethridge stated that he went to the bank and had Mr. Collins go through Mr. Gatewood's papers at the bank, and the "buy-sell" agreement was not found; and that he then proposed to Mr. Bolden that he get a copy of the "buy-sell" agreement, and have him and Mrs. Gatewood, as executrix, execute the copy of the agreement. Mr. Bolden did not seem to object, but he manifested no enthusiasm when the proposal was made. Mr. Ethridge later obtained the necessary forms, filled in the blank spaces and sent them to Mr. Bolden, but the form copies of the agreement were never signed or returned to Mr. Ethridge. Mr. Ethridge was asked

whether Mr. Bolden told him that that was the kind of agreement he had signed. Mr. Ethridge's answer was, "Yes, sir. I asked him if it was * * * He said it was, said they both signed it. I asked him where it was. He said he didn't know what Henry did with it." Mr. Ethridge then identified Exhibit "B" to the bill of complaint as a copy of the partnership insurance agreement, prepared by the Southern Farm Bureau Life Insurance Company, and as a copy of the printed form which he discussed with Mr. Bolden. On cross-examination Mr. Ethridge stated that Mr. Bolden did not refer to the instrument that he had signed as a "buy-sell" agreement. "He didn't say that, but that's what it is known as."

The pertinent provisions of the partnership insurance agreement referred to above, a copy of which was attached as Exhibit "B" to the complainant's declaration, are as follows:

"1.——————————, being the owner of an undivided ——————————of said business, shall insure his life for the sum of $—————————— with SOUTHERN FARM BUREAU LIFE INSURANCE COMPANY, Jackson, Mississippi, and——————————, being the owner of an undivided——————————of said business, shall insure his life for the sum of $——————————, with SOUTHERN FARM BUREAU LIFE INSURANCE COMPANY, Jackson, Mississippi, each of said policies to be issued and effective for the purposes of this agreement from and after ———19———, and each policy of insurance shall name the other copartner as irrevocable beneficiary. Each of said policies shall be assigned absolutely to such irrevocable beneficiaries and each of such irrevocable beneficiaries and assignees shall pay the premiums on the policy so assigned to him. In the event of the death of one of said copartners, the proceeds from the insurance policy upon such copartner's life shall be received by the surviving copartner,

in trust, for the purposes of this agreement. The policies to be applied to the purposes of this agreement are as follows:

| INSURED | POLICY NUMBER | AMOUNT |
| --- | --- | --- |
| | | |

"2. The proceeds of said policy, when received by the surviving copartner, are to be paid to the heirs or estate of said deceased copartner, and upon the payment of said proceeds as herein provided, plus any additional sum as provided in paragraph 3, the heirs or executor or administrator of said deceased copartner shall receive the sum in full consideration and as full payment of all right, title, and interest in said partnership, and such heirs, executor or administrator shall sign a receipt for such payment and execute bill of sale conveying such interest for a consideration equal in amount to the amount of insurance on said deceased copartner's life, plus any additional sum as provided in paragraph 3, and deliver same to said surviving copartner at the time of payment of said sum.

"3. Should the interest as mutually determined by the parties hereto of said deceased copartner in said partnership be greater than the amount of the proceeds of said policy, the surviving copartner shall pay such excess to the heirs, executor or administrator in addition to said proceeds referred to in paragraph 2.

"* * *

"5. * * * It is further understood and agreed that should the appraisal value of said deceased copartner's share be less than the proceeds of said policy, the heirs, executor or administrator shall pay nothing to the surviving copartner."

Mrs. Fannie E. Gatewood testified that she was the sole beneficiary under the will of Henry Gatewood, Jr., and a sister of W. N. Ethridge, Sr. She stated that

her brother, W. N. Ethridge, Sr., asked Mr. Bolden to come to her home for a conference a few days after the death of Henry Gatewood, Jr.; that Mr. Bolden came to her home and the conference was held on September 12 for the purpose of discussing the affairs of the Equipment Company and the farming operation; that there were present at the conference W. N. Ethridge, Sr., Mr. Bolden, Mary Walker Gatewood, Frances Gatewood, and Miss Seale Boone. Mrs. Gatewood stated that Mr. Ethridge asked Mr. Bolden if there was not a policy of insurance on each of the partners and a partnership agreement as to the disposition of the proceeds of the insurance policy; that Mr. Bolden said there was, and he remembered having signed it, remembered the day he signed it. Mrs. Gatewood stated that Mr. Bolden did not tell her what the agreement was, he just said he signed a partnership agreement.

Miss Mary Walker Gatewood testified that she was present at the conference between Mrs. Fannie E. Gatewood and Mr. Ethridge and Mr. Bolden a few days after the death of Henry Gatewood, Jr. Miss Frances Gatewood and Miss Seale Boone were also present. The group discussed the partnership insurance agreement which had been entered into between Henry Gatewood, Jr., and Mr. Bolden. Mr. Bolden was asked whether or not the agreement had been signed, and Mr. Bolden said, "Yes," that he remembered that he had signed the agreement. The witness was then asked whether the words "partnership insurance agreement" were used on that occasion. She stated that she did not remember specifically that that was what was said, that most of the conversation was between her uncle, Mr. Ethridge, and Mr. Bolden, but all who were present took part in the conversation.

Miss Frances Gatewood testified that she was present at the conference in Mrs. Gatewood's home, and that the subjects discussed were whether or not there was

a partnership in the farming operations and whether or not there was a partnership in the Marshall County Equipment Company, and whether or not there was a partnership insurance, and Mr. Bolden said there was a $25,000 life insurance policy on each partner and an agreement that, in the event of the death of one of the partners, the $25,000 would be paid to the heirs of the deceased partner to buy out their interest in the businses.

H. D. (Rocky) Webster testified that he was engaged in the business of selling life insurance for Southern Farm Life Insurance Company and that he contacted Mr. Bolden and Mr. Gatewood, the owners of the Marshall County Equipment Company, three or four months before Mr. Gatewood was killed, for the purpose of selling them term life insurance in the amount of $25,000 each; and during his first visit he discussed with them the company's proposed "buy-sell" partnership insurance agreement; that Mr. Bolden was present, and Mr. Bolden indicated that "this was what he wanted"; and Mr. Bolden and Mr. Gatewood suggested that he talk to their banker about it. Webster stated he then went to the bank and talked to their banker, and the banker told him to "go back and tell them to buy it." Webster was then asked, "Did they buy it?" His answer was, "They did." Webster stated that after discussing the "buy-sell" form agreement with Mr. Bolden and Mr. Gatewood, he left a set of the forms with them; that he had sold them the insurance, and at a later date he contacted them again at their place of business and questioned them about the "buy-sell" agreement. Mr. Gatewood said he had not received the forms of the "buy-sell" agreement. Webster testified that he then told Mr. Gatewood that he would send him two more copies of the "buy-sell" agreement, and he sent them two more copies of the agreement. Webster stated that after the death of Mr. Gatewood he delivered to Mr. Bolden

a check for $25,000 in payment of the face amount of the policy issued on the life of Mr. Gatewood. Preston McDaniel testified that prior to the purchase of the Southern Farm Life Insurance Company policies by Bolden and Gatewood he had discussed partnership insurance with them and a "buy-sell" agreement, and had submitted figures on the cost and full information concerning the insurance; but they did not purchase the insurance from him, for the reason, as stated by the partners, that they could not afford it at that time.

The defendant Edgar Lee Bolden testified that after the death of Henry Gatewood, Jr., he had several conversations with W. N. Ethridge, Sr., concerning the business of the partnership. The first conversation that he had with Mr. Ethridge took place in the home of Mrs. Fannie E. Gatewood a few days after Henry Gatewood's death. Mr. Bolden stated that nothing was said at that time about any agreement about partnership life insurance. The other members of the conference group only asked him whether there were any papers signed, or any agreement made, and he told them that he did sign some papers. He was then asked, "What paper did you refer to, as having signed?" His answer was, "To the insurance on the insurance. The $25,000 insurance. Me and him." Bolden stated that he had no other conversation with Mr. Ethridge at that time, that they just went on talking about the crop. Bolden stated that Mr. Ethridge later brought him papers, such as were in evidence as exhibits to Mr. Ethridge's testimony, and Mr. Ethridge wanted him to sign them, but he did not sign them. He told Mr. Ethridge that he would have to see further about the matter. On cross-examination by the appellee's attorney Bolden was requested to identify an agreement dated March 19, 1957, executed by Mrs. Fannie E. Gatewood and Edgar Lee Bolden, relating to the liquidation of the Marshall County Equipment Company, in which it was expressly stipulated that neither of the

parties waived any claim or right which he or she might have to the policy of life insurance on the life of Henry Gatewood, Jr., by any act done in connection with the liquidation of the Equipment Company partnership assets.

The appellant's attorney then offered in evidence the sworn answer of the defendant to the bill of complaint filed. The complainant's attorney interposed an objection to the admission of the sworn answer as evidence in the case. The objection was overruled.

The only other witness who was called to testify for the defendant was Walker Houston, who was a member of the board of supervisors of Lafayette County, at the time the case was tried. Houston testified that he was employed by the Marshall County Equipment Company at the time of the death of Henry Gatewood, Jr.; that he was present during some of the discussions which took place between Mr. Ethridge and Mr. Bolden after Mr. Gatewood's death concerning the life insurance policies covering the lives of the two members of the partnership; that he did not remember any specific conversation concerning the insurance. He stated that the main conversations which Mr. Ethridge and Mr. Bolden had with each other concerning the life insurance policies took place in private. On cross-examination Houston stated that he assisted Mr. Ethridge and Mr. Bolden in their search for the life insurance policies and the partnership agreement, and he admitted that he had made a statement to Mr. Ethridge in Mr. Bolden's presence, during one of the conversations which they had concerning the insurance policies and the alleged partnership agreement, to the effect that Mr. Bolden at one time admitted that he had signed some paper and he didn't know what it was, and Henry Gatewood, Jr., joked him about "signing his life away without knowing what it was." That conversation took place when the

witness and Mr. Ethridge and Mr. Bolden were together a few days after Mr. Gatewood's death.

At the conclusion of the evidence the chancellor dictated into the record his findings of fact and conclusions of law. The chancellor found that the partnership of Edgar Lee Bolden and Henry Gatewood, Jr., was formed in September 1955, and that the insurance policies were issued by the Southern Farm Bureau Life Insurance Company in May 1956, as alleged in the bill of complaint; that Henry Gatewood, Jr., was killed in an automobile accident on or about September 7, 1956, and that soon thereafter the defendant Bolden collected the life insurance on the life of Gatewood in the amount of $25,-000; that demand was made on behalf of the estate of Henry Gatewood, Jr., deceased, that Bolden pay that amount to Mrs. Fannie E. Gatewood, executrix, in accordance with the alleged "buy-sell" agreement referred to in the pleadings, and that Bolden's attitude was that he should pay to Mrs. Gatewood only an amount equal to one-half of the actual value of the business at the time of Gatewood's death, which was much less than the amount of the insurance collected; that Bolden, in his answer, had offered to pay Mrs. Gatewood the amount of $11,000, which represented one-half of the book value of the business.

The chancellor found that after Gatewood's death W. N. Ethridge, Sr., brother of the complainant, requested Bolden to execute a copy of the "buy-sell" agreement, which he refused to do; that there was quite a bit of testimony concerning the conversation which took place at the home of Mrs. Gatewood a few days after the death of Mr. Gatewood, during a conference which Mr. Bolden had been requested by Mr. Ethridge to attend. The chancellor found that the testimony of Mrs. Gatewood, Mr. Ethridge, Miss Frances Gatewood and Mary Walker Gatewood, relative to what took place at the conference was substantially the same, that is,

that Mr. Bolden admitted that there was a partnership agreement relative to the disposition of the insurance money, and he remembered signing it; that the lady witnesses, however, were somewhat confused on cross-examination, except Miss Frances Gatewood, who was not cross-examined.

The chancellor then summarized the testimony of Mr. W. N. Ethridge, Sr., relative to the conversations which he had with Mr. Bolden at the place of business of the partnership a few days after Mr. Gatewood's death, concerning the loss of the first set of "buy-sell" partnership agreement forms, and concerning Mr. Bolden's admission that the second set of forms were signed by the members of the partnership.

The chancellor made special reference to Mr. Ethridge's testimony that, while he was at the Equipment Company's place of business with Mr. Bolden and Walker Houston, Mr. Houston joked Mr. Bolden about the occasion when the agreement was signed, when Mr. Gatewood said, "I just told you this is a partnership agreement, buy-sell agreement, and you haven't read it, and how do you know you are not signing your life away?" Mr. Bolden then said, "If Henry Gatewood says its all right, its all right." The chancellor then noted in his opinion that Mr. Houston, in his testimony, somewhat corroborated that conversation, and that Mr. Bolden, when he testified did not clearly deny that he admitted the execution of the partnership agreement.

The chancellor also made specific reference to the testimony of Mr. Rocky Webster, who sold the insurance to the members of the partnership, and who testified that he explained to them the proposed "buy-sell" contract agreement, that they agreed to execute the "buy-sell" agreement, and that he left them a set of the forms, and that on a later visit he found that they had lost the forms and he gave them another set.

The chancellor then stated:

"It is not humanly possible for the court to know whether or not the agreement was executed, and if so, what became of it. However, by a preponderance of the evidence, I am forced to reach the conclusion that the complainant has met the burden of proof, that it was executed in the form copy of which is in evidence, and that it was lost or destroyed; and that under the law, and in good conscience and under the principles of equity, it should be enforced."

The chancellor found that the complainant was entitled to recover from the defendant the $25,000, being the amount of life insurance collected by the defendant on the death of Henry Gatewood, Jr., but there should be credited against that amount the amount theretofore paid to the complainant by the defendant from the sale of the business, and there should also be credited to the defendant the amount of $2,800, being the aggregate of the several amounts which Gatewood had withdrawn from the partnership account as a salary allowance. The chancellor noted the fact that the plaintiff's cause of action arose in September or October, 1956, and the suit was filed approximately five years thereafter. The chancellor was of the opinion that the complainant had been guilty of laches, and that the defendant should not be charged with interest on the $25,000 awarded to the complainant, and no interest should be added to the several amounts with which complainant was to credit the defendant. The chancellor stated that the defendant would be taxed with the court costs, and that the defendant would be charged with interest at the legal rate on the net amount of the judgment from and after the date thereof until paid.

A decree was thereupon entered in conformity with the findings of the chancellor, awarding to the complainant a money judgment in the sum of $22,200, it being agreed between the parties that, under the terms of the court's opinion, the defendant Bolden was entitled to

a credit of $2,800 against the $25,000 life insurance policy. It was further ordered that the complainant should recover interest only from and after the date of the decree.

From that decree the defendant has prosecuted this appeal, and the complainant has prosecuted a cross appeal, in which she assigns as error the refusal of the chancellor to allow her to recover interest from October 1956 to the date of the judgment of the lower court.

The main points assigned and argued by the appellant's attorney as grounds for reversal of the decree of the lower court are: (1) That there was no evidence offered, and the court in its opinion found no evidence, sufficient to establish the existence of the alleged contract of writing; (2) that there was no evidence to contradict the sworn answer of the defendant.

 We think there is ample evidence in the record to support the finding of the chancellor that the complainant had met the burden of proof, that the "buy-sell" agreement in the form set forth in the copy attached as an exhibit to the complainant's bill was executed and lost or destroyed. We also think that the evidence on behalf of the complainant was sufficient to overturn the averments of the sworn answer of the defendant, in which he denied that there was ever an agreement between the parties such as the form agreement attached as Exhibit "B" to the bill of complaint.

 It is well settled that a party seeking recovery on a lost instrument must, as a rule, prove its due execution, contents and loss, although where the suit is in equity, proof of the execution of the instrument may not be necessary unless it is denied under oath. 34 Am. Jur., p. 625, Lost Papers and Records, § 60.

 It is also well settled that parole evidence is admissible to show the making of a contract which has been lost or destroyed. 34 Am. Jur., 627, Lost Papers and Records, § 61.

In discussing the necessary proof to show the loss or destruction of a written instrument as the basis for the introduction of secondary evidence of its contents, the textwriter in 20 Am. Jur., p. 392, Evidence, § 440, says: ''The necessary proof of the loss or destruction of a writing as the basis for the introduction of secondary evidence of its contents may be made by the use of any competent evidence which has a logical tendency to establish such fact. The precise quantum of proof that will suffice in this respect is obviously not susceptible of a general rule applicable to all situations that may arise. The question is always one of diligence in the effort to procure the original. It is clear, however, that the best evidence rule does not require proof of the loss or destruction of a writing beyond all possibility of mistake or proof that will exclude every hypothesis of the existence of the original. It is sufficient if the party satisfies the court that, after due and diligent search upon his part, the instrument cannot, due to its loss or destruction, be produced upon the trial.''

It seems clear from a reading of the testimony of Rocky Webster, and the chancellor had a right to believe, that, when the two partners, Bolden and Gatewood, purchased the insurance from Rocky Webster in May 1956 they had in mind the plan of insurance protection outlined by Mr. Webster and approved by their banker, including the ''buy-sell'' agreement which provided that the proceeds of each of the policies should be paid to the other, as named beneficiary, in trust, to be paid over to the heirs or legal representatives of the deceased partner for their interest in the partnership.

Mr. Ethridge testified that, during his first interview with Mr. Bolden after the death of Henry Gatewood, Jr., Mr. Bolden stated that there were two insurance policies for $25,000 and a ''buy-sell'' agreement on those policies. Mr. Ethridge also testified that

before the conference at Mrs. Gatewood's home ended he asked Mr. Bolden ''if there wasn't two policies with the buy and sell agreement,'' and Mr. Bolden said there were. Mr. Ethridge stated that he then asked Mr. Bolden if he knew where they were, and Mr. Bolden said, ''No, he would look and see if he could find them.'' Miss Frances Gatewood, who was present at the conference, testified that Mr. Bolden, when asked whether or not there was parternership insurance, stated that there was a $25,000 life insurance policy on each of the partners and an agreement that, in the event of the death of one partner, the $25,000 would be paid to the heirs of the deceased partner to buy out their interest in the business.

The above mentioned admissions testified to by Mr. Ethridge and Miss Frances Gatewood were admissions alleged to have been made by Mr. Bolden only a few days after Henry Gatewood's death; and the chancellor, as stated above, made special note of the fact that Mr. Bolden, when he testified, did not clearly deny that he admitted the execution of the partnership agreement.

In 31 C.J.S., p. 1023, Evidence, § 272a, the textwriter in discussing extrajudicial admissions, says: ''Any statement made by or attributable to a party to an action which constitutes an admission against his interest and tends to establish or disprove any material fact in the case is competent evidence against him.'' In § 382a, the same textwriter in discussing the effect of admissions, says: ''If voluntarily made, and distinct and unequivocal, admissions against interest are taken or presumed to be true, and dispense with the necessity of any other proof of the fact admitted, although it does not render other proof of the fact incompetent.''

In 20 Am. Jur., p. 1047, Evidence, § 1196, the textwriter, in discussing the probative value of admissions, and declarations, says: ''The probative value of ad-

missions and declarations, when admissible as evidence, depends upon the circumstances under which, the persons to whom, and the time when the admissions or declarations were made * * *. Admissions are rarely, if ever, conclusive of the facts stated, but are open to explanation and contradiction. They should be considered by the jury together with all the evidence presented, and such weight should be given to them as they appear to be entitled to receive in view of all the circumstances attending the making thereof. Many factors necessarily affect the evaluation placed upon admissions · * * *. In a proper case an admission or declaration may be of sufficient force to establish a fact, or to base a verdict thereon, or to overcome a presumption.''

██ ██ In Aide v. Taylor, 214 Minn. 212, 7 N.W. 2d 757, 145 A.L.R. 530, the Court held that an admission, if believed by the trier of fact, is substantive evidence of the facts to which it relates. ██ ██ In Arky v. Coker (1931), 161 Miss. 694, 137 So. 790, the Court held that admissions of a party denying the signature or execution of instruments are sufficient to meet the burden imposed on the plaintiff.

██ ██ It is earnestly contended, however, on behalf of the appellant that the appellee's proof in this case was insufficient to overturn the sworn answer filed by the appellant; and the appellant's attorney cites in support of his contention on that point Hope v. Evans, 1 Smedes & M. Chancery, 195; Johnson v. Crippen, 62 Miss. 597; and Fant v. Fant, 173 Miss. 472, 162 So. 159. But the quantum of proof offered on behalf of the appellee in this case to overturn the sworn answer of the appellant far exceeded the quantum of proof which the Court had before it in each of those cases. In Hope v. Evans, supra, the Court held that proof of mere admissions of a party, unsustained by any other circumstances, should always be cautiously weighed, because

of their liability to be misunderstood, the facility of fabricating, and the difficulty of disproving them. In Johnson v. Crippen, supra, the Court found that no manual delivery of the deed was established; that if there was a delivery at all it was because the defendant intended what she did as a delivery; and this she denied under oath, and by independent evidence gave an explanation consistent with her answer of the opposed facts established by the complainants. The Court then held that, where a complainant by an unsworn bill calls for and procures the sworn answer of the defendant, such answer cannot be overturned by any evidence less than that of one credible witness and corroborating facts. In Fant v. Fant, supra, the Court found that there was no evidence supporting the allegation of the bill of complaint that the defendants procured the deeds by the exercise of undue influence over the grantor, and the sworn denial of the answer had not been overturned.

It is also argued on behalf of the appellant that the chancellor erred in refusing to hold that the appellee was barred of her right to sue because of her delay in filing her suit after her cause of action arose. We think there is no merit in this contention. This Court has held in many cases that mere delay short of the statutory period of limitations does not itself bar relief; that laches in a legal sense is not merely delay, but delay that results in injustice or disadvantage to another. Continental Oil Company v. Walker, 238 Miss. 21, 117 So. 2d 333, and cases cited, The record in this case shows that in the agreement signed by the parties on March 19, 1957, relating to the liquidation of the Marshall County Equipment Company partnership, it was expressly stipulated that neither of the parties in effecting a liquidation of the partnership waived any claim or right which he or she might have to the proceeds of the life insurance policy on the life of Henry Gatewood, Jr., deceased. There was no error

in the refusal of the chancellor to sustain the appellant's plea that the appellee was estopped to maintain her suit because of delay in the filing of her suit.

Other points have been argued by the appellant's attorney as grounds for reversal of the decree of the lower court. We have given careful consideration to each of those points, and we find no merit in any of them.

For the reasons stated above, the decree of the lower court will be affirmed on the appellant's direct appeal.

The only point assigned and argued by the appellee's attorneys as ground for reversal on her cross appeal is, that the chancellor erred in refusing to permit the cross appellant, Mrs. Gatewood, to recover interest from October 1956 to the date of the judgment.

We think there was error in the court's refusal to permit the recovery of interest from the date the money sued for became due. In Rubel v. Rubel, 221 Miss. 848, 75 So. 2d 59, the amount of the unpaid balance of the purchase price of a deceased partner's interest in the business was in dispute, and it was argued that no interest should be allowed on the unpaid balance until the amount of the balance had been judicially determined. This Court, in rejecting that contention, quoted with approval the rule stated in 47 C.J.S., p. 67, Interest, § 55, that "The pendency of litigation between the parties to an existing debt concerning it will not of itself suspend the running of interest on such debt during such litigation, where the money is not paid into court." This Court also held in that case that where the suit is a suit to enforce the obligations of a contract for the payment of money, as in this case, the right of the complainant to recover interest is fixed by the statute; that interest in a case of this kind is not imposed as a penalty for wrong doing; it is allowed as compensation for the detention of money overdue. See also Miller v. Henry, 139 Miss. 651, 103 So. 203.

The decree of the lower court in favor of the appellee and cross-appellant will therefore be affirmed on appellant's direct appeal; but the decree will be modified and corrected on the appellee's cross appeal so as to include interest at the rate of six percent per annum on the $22,200 from October 1, 1956, and a judgment will be entered here in favor of the appellee and cross-appellant for that amount.

Affirmed on direct appeal, and judgment modified and corrected as to interest, and affirmed on cross appeal.

*Gillespie, McElroy, Brady and Patterson, JJ.,* concur.