234 So.2d 292 (1970)
Harold DIDDLEMEYER
v.
STATE of Mississippi.
No. 45779.
Supreme Court of Mississippi.
April 20, 1970.
Rehearing Denied May 11, 1970.
*293 Thomas B. Sumrall, Gulfport, for appellant.
A.F. Summer, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., and Samuel H. Wilkins, Wm. Edward Ellington, Special Asst. Attys. Gen., Jackson, for appellee.
INZER, Justice:
Appellant Harold Diddlemeyer was indicted, tried and convicted in the Circuit Court of Harrison County for the crime of murder and was sentenced to be imprisoned in the State Penitentiary for life. From this conviction and sentence he appeals and we affirm.
The evidence on behalf of the State establishes that about 8 a.m. on December 16, 1967, the body of Harry Bennett was found just outside the Gallery Apartments where Bennett resided. He had been shot several times. Edgar Roush, a resident in the apartment building, testified that about 3 a.m. on that morning he heard a noise which sounded like fire crackers shooting. He went to the window of his apartment and looked out but saw nothing.
The police found six empty casings of .32 caliber bullets at the scene of the crime. They had been fired from a .32 caliber automatic. An autopsy revealed that at least five bullets entered the body of Bennett. One bullet entered his neck and went through his head. Two bullets entered the left flank and two the left hip. The doctor testified that one of the bullets went through the right ventricle of the heart and in his opinion had caused instant death.
On March 21, 1968, appellant was incarcerated in the Duval County Jail in Jacksonville, Florida. He called the sheriff's office and stated that he wanted to talk to a detective. In response to his call Sgt. Richard Elian, an employee of the sheriff's office, was sent to the jail. Appellant informed Elian that he had a confession that he wanted to make. Elian then advised him of his constitutional rights and appellant told him that either on December 15 or December 16, 1967, he had shot and killed Harry Bennett in Gulfport. He also told Elian that a friend, whose name he would not divulge, had hired him to do the killing and that his friend had furnished him with a small caliber gun with which to do the shooting. He also stated that this friend had carried him to Bennett's residence where they waited until Bennett came home. Appellant said that he had been paid $500 for doing the job.
Elian sent a teletype message to the Mississippi State Highway Patrol asking if there had been a murder of a person by the name of Harry Bennett around December 16, 1967. Later that same day Junie Tiblier, chief deputy sheriff of Harrison County, contacted Elian and requested that he ask appellant certain specific questions about the killing. Elian then asked the questions and furnished Tiblier with the answers. On March 23, 1968, Tiblier, Leslie Montgomery, chief administrator for the Police Department of Biloxi, and Detective Leroy Bourgeois went to Jacksonville for the purpose of investigating the murder of Bennett. These men and Sgt. Elian went to the jail where appellant was incarcerated. Appellant was acquainted with the Mississippi officers and they all knew him. Appellant was again advised of his rights and before making any statement he read and signed the statement to the effect that he had been advised of his "Miranda rights". He then told the officers that he had shot Harry Bennett some five or six times with a small caliber gun furnished him by a friend who had employed him to do the shooting and he had been paid $500 for doing the job. Mr. Montgomery wrote out the detailed statement made by appellant and with the assistance of the appellant prepared a sketch of the place where the shooting occurred. After reading the statement prepared by Montgomery, appellant signed it.
Appellant testified in his own behalf at the trial and although he admitted he had *294 told the sheriff's office in Jacksonville, Florida, that he wanted to see a detective and at his request Elian came to the jail, and that he told Elian that he had shot Bennett and had been paid to do the killing, he denied that there was any truth in his statement to this effect. He also admitted that he signed the statement written by Mr. Montgomery setting out the details of the killing. He stated that his confession was untrue and that he had not shot Bennett and denied that he was in Biloxi on the date that Bennett was killed. When asked by his attorney why he had made the confession appellant stated:
Well, at the time I made this confession I was on escape from Mississippi State Penitentiary. I got arrested in Florida for armed robbery, a policeman got shot  I didn't have anything to do with the shooting  but anyway, we were sitting around the jail, locked up; myself and four other guys were talking one day, and this guy I was telling about this Harry Bennett murder case, and we just kept talking and one thing lead to another and he said  why don't you confess to it, maybe you can get out of these charges here because I was facing 20 years there, and I got a bad record, as all of you all will find out later, and so he said  why don't you confess to the murder charges and maybe they will send you back to Mississippi and this will be over with. He said they figure they got a good case against you if you confess, and you stand a chance of going to the gas chamber for murder, so I thought about it and decided I would do it, that is why I confessed to it, but I did not kill Harry Bennett.
He also stated that he had learned of the murder through newspaper articles and that is how he knew the details contained in his confession.
Appellant assigns as error nine grounds for reversal, but his brief does not conform to his assignment of errors and some of the errors assigned are not briefed. We will only discuss those errors assigned and briefed, which in our opinion merit discussion.

Point I.
Appellant contends under Point I of his brief that the denial of appellant's motion for a continuance constituted a general denial of due process of law and also constituted abuse of discretion on the part of the trial court. Appellant concedes that whether a continuance is granted is a matter that rests in the discretion of the trial court, but contends that the trial court abused its discretion in this instance. With this we cannot agree. All appellant's motions for continuance, except one, were made after the special venire was drawn. Mississippi Code 1942 Annotated Section 2506 (1956) provides as follows:
Application for continuance in capital cases shall not be entertained after the drawing of a special venire, except for causes arising afterward, unless a good excuse be shown for not having made the application before.
The motion for continuance filed prior to the time of the drawing of the special venire dealt with the drawing and make-up of the special venire and the court was amply justified in overruling this motion for continuance. The only motion filed after the drawing of the venire that merits discussion is the motion for continuance in order that appellant could secure the presence of a witness who resided in Jacksonville, Florida. The motion stated that this witness had advised appellant's attorney by telephone that she saw appellant in Jacksonville, Florida, at about 1:30 a.m. on December 15, 1967. Appellant requested that the cause be continued to the next regular term of court so that appellant could secure the presence of this witness. Appellant requested that the State procure the attendance of this witness at State expense. There is nothing in the record to indicate that appellant made any effort to have this witness voluntarily *295 appear and testify. Neither did he attempt to procure an affidavit from her to support his motion for a new trial. In King v. State, 251 Miss. 161, 168 So.2d 637 (1964) we set out the well-established rules with regard to the requirements that must be met by defendant when he seeks to put the trial court in error for failure to grant a continuance due to the absence of the witness. There we said among other things:
Capital cases are required to be tried during the term in which the indictment is returned, unless good cause is shown to the contrary. See Dean v. State, 234 Miss. 376, 106 So.2d 501 (1958); Mississippi Code Annotated section 2518 (1942).
The last line in Mississippi Annotated Code section 1520 (1942) is as follows: "A denial of the continuance shall not be ground for reversal unless the Supreme Court shall be satisfied that injustice resulted therefrom."
The granting of a continuance is largely within the sound discretion of the trial court, and a judgment will not be reversed because the continuance is refused unless there has been an abuse of sound discretion. Woodruff v. State, 220 Miss. 24, 70 So.2d 58 (1954); Gatlin v. State, 219 Miss. 167, 68 So.2d 291 (1953). (251 Miss. at 170, 171, 168 So.2d at 640).
Under the circumstances of this case the trial court was justified in overruling the motions for continuance and its doing so did not deny appellant due process and we cannot say any injustice resulted therefrom.

Point II.
Under this point appellant urges that denial to appellant compulsory process for the attendance of out-of-state witnesses constitutes a denial of due process of law and a violation of the equal protection of the law. As we understand appellant's argument it is that he was not only entitled to compulsory process for out-of-state witnesses but that he was entitled to have the attendance of these witnesses at the expense of the state. He argues that Section 1895, Mississippi Code 1942 Annotated (1956) provides for compulsory attendance for out-of-state witnesses in a trial pending in this state and the denial of his motion for compulsory process at the state's expense was a denial of his rights under Mississippi Constitution, Section 14 Article 3 (1890) and the Sixth Amendment to the Constitution of the United States. We find no merit in this contention. The record does reflect that appellant asked for compulsory process for out-of-state witnesses at state expense. Three of the out-of-state witnesses were confined in penitentiaries in other states. The other was Mrs. Caphart, who resided in Jacksonville, Florida. Under our law the defendant is entitled to compulsory process for witnesses within the state and such witnesses are required to attend and testify, but they are not entitled to compensation to be paid by the state or the county in which the trial is being had. The trial court was without authority to compel the attendance of the witnesses requested by the defendant under any circumstances so long as they were outside this state. The only authority that the courts of this state have to compel the attendance of a witness who resides out of the state is under the Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Cases. Section 1895, supra, is a part of this act. The rule relative to the application of this act is succinctly stated in the second paragraph of 21 Am.Jur.2d Criminal Law § 348 (1965) as follows:
The Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings contains no provision authorizing a court to procure the attendance and testimony of witnesses for the defendant at public expense. An accused is not deprived of *296 his constitutional right to compulsory process and to due process of law and the equal protection of the laws by the refusal of a court to order an allowance for the payment of witnesses sought by the defendant to be subpoenaed from another state pursuant to the provisions of the act.

Point III.
Appellant contends that his conviction was based upon incredible evidence, that the state failed to meet its burden of proof and that the verdict of the jury is against the overwhelming weight of the evidence and evinces bias, passion and prejudice on the part of the jury. We find no merit in this contention. The evidence on behalf of the state established without question that Harry Bennett met his death as a result of a criminal agency. Appellant's confession, if believed by the jury, constituted ample evidence to establish this criminal agency. Counsel for appellant points out that appellant repudiated his confession and anyone reading the newspaper account of the killing or hearing television and radio reports of the killing could have secured enough information to have made a confession to the crime. It is also pointed out that there are certain discrepancies between the facts establishing the crime and those in appellant's confession. The jury had all these facts before it and the jurors observed the appellant while he was testifying and heard his reasons why he confessed. They determined these issues. Confessions are not conclusive and may be of little weight or of great weight according to the circumstances of the case, however, ordinarily, this is a matter for the jury to determine and not for the court. After a review of the evidence in this case, we cannot agree with appellant's contention that the confession together with the other testimony is contrary to human experience and is inherently incredible.

Point IV.
Under this point appellant urges that the use as evidence of a so-called letter from appellant to one Judy Gordon involved the use of perjured testimony or manufactured evidence, and thereby deprived appellant of due process of law.
The state introduced as Exhibit Z-1 a letter that was said to have been given to a trustee by appellant and intercepted by a jailor. The jailor testified that the letter was in the handwriting of the appellant. The letter was a love letter written to Judy Gordon who was an inmate of the Harrison County Jail. In it was a statement that appellant was being treated like an animal and "if it takes an animal to shoot a man eight times, I'm an animal." Appellant denied that the letter introduced was in his handwriting, but admitted that he had written numerous letters to Judy Gordon. Later during the course of the trial while counsel for appellant was cross-examining Mr. Bourgeois, a police officer, the court allowed counsel to examine the officers file from which he was testifying and in it appellant found a photostatic copy of a letter containing the same language as the letter introduced by the state but in a different handwriting. It is apparent that both were not written by the same person. The real question involved on this issue is whether appellant wrote the prejudicial statement in a letter to Judy Gordon and not which of the letters was in his handwriting. When appellant sought to introduce the photostatic copy found in the police file the district attorney stated that it was a photostatic copy of the letter introduced by the state as its Exhibit Z-1. It is apparent from the record that the district attorney was mistaken when he said that the letter introduced by appellant was a photostatic copy of state's Exhibit Z-1. The jury had all this evidence before it and it was for the jury to decide the weight and credibility of the testimony of the officer who testified that the letter introduced was in the handwriting of the appellant. Appellant *297 did not raise this question in his motion for a new trial. This should have been done, thereby giving the trial judge the opportunity to rule on this question. In his motion for a new trial appellant did raise the question of improper argument by the district attorney on this issue, but there is nothing in the record to show what that argument consisted of. If appellant objected to the argument of the district attorney he failed to have the record show such objection and failed to request a bill of exceptions to preserve such a point. We cannot say, from the record before us, that the state knowingly used false evidence, and the facts of this case distinguish it from the cases cited by appellant.
We have carefully considered the other points raised by appellant and find them to be without merit. Our examination of the record reveals that appellant freely and voluntarily confessed that he killed Harry Bennett after having been properly warned of his constitutional rights. The action of the trial court in admitting this confession in evidence was proper. In his own testimony he does not deny that he was warned of his rights and that he fully understood them. His only contention is that his confession was false and it was made for the purpose of being brought back to Mississippi. The jury decided this issue and the evidence is sufficient to support its verdict. The verdict is not against the overwhelming weight of the evidence.
After the record in his case was filed with this Court and the case had been briefed, appellant filed a motion for a new trial based upon newly discovered evidence. The state responded to this pleading by filing a motion to dismiss this petition pointing out that the petition is in the nature of a remedy supplemental to a writ of error coram nobis and is prematurely filed. The petition seeks to have this Court consider on appeal matters not in the record before us for review. This we cannot do. A case appealed to this Court must be decided solely upon the record made in the trial court. State v. Cummings, 203 Miss. 583, 35 So.2d 636 (1948). We are of the opinion that the motion of the state to dismiss this petition is well taken and should be sustained. The petition will be dismissed but without prejudice to the right of appellant to file, if he so desires, a petition in compliance with Section 1992.5, Mississippi Code 1942 Annotated (1956) and Mississippi Supreme Court Rule 38.
For the reasons stated we are of the opinion that this case should be, and is, affirmed.
Affirmed.
ETHRIDGE, C.J., and PATTERSON, SMITH and ROBERTSON, JJ., concur.