328 So.2d 334 (1976)
Edward J. BURRILL
v.
STATE of Mississippi.
No. 48882.
Supreme Court of Mississippi.
March 2, 1976.
Rehearing Denied March 30, 1976.
*335 Daniel, Coker, Horton, Bell & Dukes, Alben N. Hopkins, Gulfport, for appellant.
A.F. Summer, Atty. Gen. by John C. Underwood, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before INZER, P.J., and SMITH and SUGG, JJ.
SMITH, Justice:
Edward J. Burrill was indicted for the murder of one Vicky Sue Aigner. He was tried on that charge in the Circuit Court of Harrison County, convicted and sentenced to life imprisonment.
Burrill undertook to give a ride in his automobile to Vicky Sue Aigner, a young woman, from New Orleans, Louisiana, to Miami, Florida, and it is not disputed that the trip was duly begun and progressed at least as far as Gulfport, Mississippi.
On December 20, 1973, a man named Thompson, driving from Bay St. Louis, Mississippi to Hattiesburg, Mississippi on U.S. Highway 49, stopped to relieve himself. Leaving the road for that purpose, Thompson discovered the nude body of a woman, later identified as Vicky Sue Aigner, lying just past a fence about sixty feet from the highway. Her throat had been deeply slashed, photographs in the record showing that her head had been almost severed from her body. An earring remained in one of the victim's ears.
The Harrison County Sheriff's Department was notified and conducted an examination of the area. A Blue Cross Blue Shield card and a fragment of a small yellow card were found, each of which bore Burrill's name.
On December 26, 1973, Burrill employed an attorney to represent him in connection with a traffic charge in Foxboro, Massachusetts. When Burrill's attorney contacted the sheriff's office there about the charge, he was informed that the authorities wished to talk to Burrill about an incident which had occurred in Mississippi. At about 3:00 o'clock in the afternoon of that same day, Massachusetts State Trooper Kilpeck arrived at the attorney's office and, in the presence of his attorney, informed Burrill of his constitutional rights as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The attorney explained to Burrill as each of these "rights" was read to him what it meant. On his way back with State Trooper Kilpeck to the Massachusetts State Police Barracks at Foxboro, Massachusetts, Burrill told Kilpeck that he had left his automobile parked at an airport in Orlando, Florida, describing it as a maroon and white Ford with a Massachusetts license plate.
After arriving at the barracks Burrill told Kilpeck that on December 15, 1973, a young woman at a New Orleans bar had asked him to give her a ride to Miami, Florida, and that he had agreed to do so. According to Burrill, this woman was about 24 years of age, with brown hair, and was wearing blue jeans and a jacket. He told Kilpeck that near Gulfport, Mississippi, the woman started crying and asking to be let out of the car. Burrill said he stopped and dropped her off at the Gulfport exit on Highway 10 and continued for about another 100 miles along that highway before discovering that his wallet was missing. He said he had last seen it as it lay on the seat of his car, between him and the woman. Trooper Kilpeck relayed the information as to Burrill's car to the sheriff of Harrison County, Mississippi.
At the request of Mississippi authorities, the Florida Department of Law Enforcement then located Burrill's car at the McCoy Jetport in Orlando, Florida and subjected it to a thorough examination.
*336 Blood and traces of blood were found in numerous places inside the car. Blood was identified on the right door support, front seat, both sides of the rear of the front seat, on the left rear armrest and underneath the right rear armrest and gear shift knob. Stains on the right rear door panel, right rear seat and right rear armrest were in sufficient quantity to be classified and were identified as human blood, Type O, RH Positive. It was established that Burrill and the victim both had blood which fell within that classification.
Several articles were found in the car on which human blood Type O, RH Positive, was identified, including a sideview mirror, a black robe, a blue shirt, a green shirt and a cardboard box. Human blood was also found on a part of an earring and a swimming fin which were in the car. The part of the earring found in the car consisted of the gold loop by means of which the earring is affixed to a pierced ear and was similar to that part of the single earring found in the ear of the victim when her body was discovered. Fingerprints of Vicky Sue Aigner, and a substance appearing to be blood, were identified on the sideview mirror. Burrill's fingerprints were identified on a silver goblet found in the car.
On December 28, 1973, Deputy Sheriff Smith of the Harrison County Sheriff's Department, interviewed Burrill in Foxboro, Massachusetts in the presence of Burrill's attorney, Trooper Kilpeck and various other Massachusetts officials. This was done with the consent of Burrill's attorney and prior thereto Burrill's Miranda rights were explained to him for the second time. Burrill consented to the interview and signed a "Warning and Consent to Speak Form," which was witnessed by his attorney. In the course of the interview, Burrill identified a picture of Vicky Sue Aigner, taken before her death, as his passenger on the trip from New Orleans and his version was, in substance, the same as previously given to Massachusetts State Trooper Kilpeck. The interview was terminated by Burrill's attorney when Harrison County Deputy Sheriff Smith pointed out to Burrill that it would have been impossible for him to have driven on along Highway 10 for about another 100 miles, as he said he had done, after putting Vicky Sue Aigner out of his car at Gulfport.
The sufficiency of the evidence to support the conviction is challenged. It is pointed out that much of the evidence against Burrill was circumstantial and, that being so, it was necessary that it exclude every reasonable hypothesis save that of Burrill's guilt. Burrill did not testify upon the trial of the case on its merits, and his version of the case, therefore, appears only from his statements testified to by the officers and from his testimony on the motion to suppress. Notwithstanding the fact that the evidence may be circumstantial, the jury, as the trier of fact, remains the judge of its weight. The credibility of the witnesses also is a matter which lies peculiarly within the province of the jury. Payne v. The State, 57 Miss. 348 (1879); Pearson v. State, 248 Miss. 353, 158 So.2d 710 (1963); Smith v. State, 278 So.2d 408 (Miss. 1973).
It does not appear that anyone saw the actual commission of the homicide. Therefore, if the killer is to be brought to justice in a case of this kind, the ultimate fact of his guilt must be derived from circumstances proven. In this case the evidence of Burrill's guilt, although circumstantial, is quite strong. A careful scrutiny of the record makes it apparent that the facts proved were sufficient to support the inference of guilt drawn from them by the jury as triers of fact and amply justified the conclusion on the part of the jury that, in logic and reason, the evidence did exclude every reasonable hypothesis save that of Burrill's guilt.
We are forced to conclude that the evidence, outlined briefly above, was ample to support Burrill's conviction. Under the circumstances in evidence, the *337 truth or falsity of Burrill's exculpatory version of the facts, as contained in his statements to the officers, was also for the jury's determination. On the motion to suppress, Burrill said, in effect, that his statements to Officer Kilpeck had not resulted from any threat or promise but that Kilpeck had, in fact, been nice to him. The issue raised on this motion, therefore, involved largely the contention that there had been a failure to give Burrill the Miranda warnings rather than that Burrill's statement had been wrongfully induced by abuse, threats or promises that rendered it involuntary in fact. However, the evidence that Burrill had twice been given the warnings was strong and the trial judge was justified in accepting it.
This conflicting evidence (as to the voluntariness of a confession) presented a question of fact to be determined by the trial judge who was in the best position to observe the witnesses as they testified. We have consistently held that where evidence is conflicting on the question of whether a confession was voluntarily made, that the issue is to be determined by the trial court; and upon review, this Court will not disturb the trial court's finding unless it appears to be contrary to the evidence. Ivey v. State, 246 Miss. 117, 149 So.2d 520 (1963). [Clemons v. State, 316 So.2d 252, 253 (Miss. 1975)].
Complaint that testimony as to certain statements against interest made by Burrill was hearsay and inadmissible is not well founded. Bolden v. Gatewood, 250 Miss. 93, 164 So.2d 721 at 731-732 (1964). (Citing 31 C.J.S. Evidence § 272a, p. 1023 and 20 Am.Jur., p. 1047, Evidence, § 1196).
The absence of certain out-of-state witnesses is urged as requiring reversal. Facts expected to be proved by the absent witnesses were not set out nor were the names and addresses of such witnesses set out in an affidavit. Nor was there an affidavit containing a statement that the witnesses were not absent by the consent or procurement of the accused. In King v. State, 251 Miss. 161, 168 So.2d 637 (1964), the proper procedure is outlined as follows:
"In view of the frequency of these applications we deem it advisable to repeat what has been before substantially said as to the correct course to be pursued by a defendant who applies for a continuance. To begin with he should promptly issue summonses for all witnesses who may be material for his defense; for any witness who has been served with process and who has failed to appear as commanded he should ask for an attachment which will never be refused by the court; in capital cases he should apply for a continuance before the venire is drawn, setting out in his affidavit the names and residences of the absent witnesses, the facts expected to be proved by them, and should also show to the court what steps have been taken to secure their attendance; he should negative the idea that they are absent with his consent or procurement, and if any reasons are known to him why they are not present, these should be stated.
"If the court declines to grant the continuance he should sue out the proper process for them, and when the case is called for trial should renew his application, make such changes in his affidavit as the conditions then existing require. If the continuance is still refused, he should with unremitting diligence seek to secure their attendance pending the trial by the continued use of the process of the court; if tried and convicted he should still persist in his efforts to enforce their attendance before the expiration of the term, and on his motion for a new trial present them to the court for examination; if, with all of his efforts, he is unable to have the witnesses personally present, he should, if practicable, secure their ex parte affidavits, which should be presented for the consideration of the court, which, on the motion for a new trial, will review the whole case and *338 correct any error prejudicial to the defendant which may appear in any part of the proceeding." (251 Miss. at 171, 172, 168 So.2d at 641).
The question raised as to the out-of-state witnesses has been dealt with by this Court in Diddlemeyer v. State, 234 So.2d 292 (Miss. 1970).
See also Chandler v. State, 272 So.2d 641 (Miss. 1973), wherein this Court said:
The first suggestion of error, that the trial court erroneously failed to require the attendance of an out-of-state witness as provided by Section 1895, Mississippi Code 1942 Annotated (1956), is not well taken for at least four reasons.
[1] First, this Court has held that there is no method by which the out-of-state witness can be paid and that the trial court was without authority to force a witness for the defense to leave a foreign state to testify in this state. See Diddlemeyer v. State, 234 So.2d 292 (Miss. 1970). The rule in the Diddlemeyer case seems to be the general rule accepted by a large part of other state jurisdictions. See Anno. 44 A.L.R.2d 732 at 738 § 5 (1955).
[2] Second, assuming for the sake of argument that this Court would hold that section 1895, Mississippi Code 1942 Annotated (1956), applied to defense witnesses, under the facts here presented we could not hold the trial court in error because even where the court has authority to compel the attendance of witnesses, the witnesses' testimony must be material to the issue involved and the party requesting their attendance must not only have process issued, but must make every effort during the trial to have these witnesses present. He must present an affidavit from them giving their testimony, on a motion for a new trial. The rule with reference to continuance because of an absent witness is analogous and is applicable here. See King v. State, 251 Miss. 161, 168 So.2d 637 (1964). (272 So.2d at 643).
Nor was any evidence offered upon the presentation of the motion for acquittal, or alternatively, for a new trial in which the same or similar questions were raised.
It is complained that the trial court was in error in overruling a motion that Burrill be given a mental examination. This motion was neither sworn to nor accompanied by an affidavit stating facts supporting the proposition. Under Mississippi procedure, a motion is at issue without the necessity of an answer or traverse of any kind, and the burden rests upon movant of supporting his motion with proof. None was offered in support of the motion and nothing appears from the record indicating a probability that Burrill was mentally incapable of assisting counsel in his defense nor that he was suffering from some mental disability. The proposition was dealt with by this Court in Jaquith v. Beckwith, 248 Miss. 491, 157 So.2d 403 (1963):
Both before and after the 1960 statute, the rule has been that, where there is a reasonable probability that defendant is incapable of making a rational defense, the trial should not proceed until his mental condition has been investigated and it appears he is capable of standing trial. McGinnis held that the statute made no change in the law in reference to trying a person on present insanity. Its purpose was to authorize the circuit judge to appoint a psychiatrist and to pay for the expense of the examination from county funds. Cf. Miss.Code 1942, Rec., §§ 6909-11, 2499-2503, 2573-2575, 6777. Code section 2575.5 requires that, before the psychiatric examination is ordered, the court should find that the defendant's ability to make a defense is "in question", meaning that there is such a reasonable probability that he is incapable of making a rational defense, as to warrant the psychiatric test. The essential basis of an order under section 2575.5 is a finding of such reasonable *339 probability founded upon evidence supporting such a finding.
If such evidence exists, then the psychiatric examination under the statute may be ordered, as an aid to the court and the jury in determining the issue of present insanity. Assuming a properly authorized psychiatric examination has been made under the statute, the court and the jury may then consider the doctors' findings in determining, as a question prior to trial on the merits, the issue of present insanity. Robinson v. State, 223 Miss. 70, 81, 77 So.2d 265, 83 So.2d 99 (1955). By its own terms section 2575.5 authorizes an order for psychiatric examination of an accused only where there is evidence indicating a reasonable probability that the defendant is incapable of making a rational defense.
The trial judge has a reasonable discretion when acting under the statute, but the statute defines the scope and limitations of orders under it. The discretion is a judicial one, including a requirement that there must be some evidence warranting a conclusion of reasonable probability, before an accused can be committed to a hospital for a lengthy psychiatric examination. Ordinarily orders under section 2575.5 are not controverted, since usually defendant or his counsel request or agree to them. Nevertheless, the statute has its limitations. It requires some evidential basis. (248 Miss. at 500-501, 157 So.2d at 407-408).
Other matters assigned as error have been examined and considered and are found to be without merit.
The conviction and sentence must, therefore, be affirmed.
AFFIRMED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and ROBERTSON, SUGG, WALKER and BROOM, JJ., concur.